[No. A092813. First Dist., Div. Two. June 21, 2001.]

AMERICA ONLINE, INC., Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
AL MENDOZA, JR., et al., Real Parties in Interest.

**COUNSEL**

Latham & Watkins, Everett C. Johnson, James K. Lynch and Randall T. Kim for Petitioner.

No appearance for Respondent.

Marion's Inn, Kennedy P. Richardson, Mark Palley, Sam Walker and Yvonne M. Pierrou for Real Parties in Interest.

**OPINION**

**RUVOLO, J.—**

## I.

### INTRODUCTION

This petition for writ of mandate was filed by petitioner America Online, Inc. (AOL) following the denial of its motion to stay or dismiss a putative consumer class-action lawsuit. The motion was based on a claim that California is an inconvenient forum in which to litigate the dispute concerning AOL's proprietary Internet service. In support of its motion, AOL exclusively relied on a forum selection clause in its contracts with real parties in interest, Al Mendoza, Jr. (Mendoza) and the potential class members, which designated Virginia as the jurisdiction in which all disputes arising out of the relationship would be litigated. The agreement also included a choice of law provision requiring that Virginia law be applied to any such dispute.

We conclude the court properly denied AOL's motion. First, one of the causes of action seeks class action relief under the California Consumers

Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.). This act contains a provision that voids any purported waiver of rights under the CLRA as being contrary to California public policy. Enforcement of the contractual forum selection and choice of law clauses would be the functional equivalent of a contractual waiver of the consumer protections under the CLRA and, thus, is prohibited under California law.

Second, we conclude that Virginia law does not allow consumer lawsuits to be brought as class actions and the available remedies are more limited than those afforded by California law. Accordingly, the rights of Mendoza and the California consumer class members would be substantially diminished if they are required to litigate their dispute in Virginia, thereby violating an important public policy underlying California's consumer protection law. For this independent reason, the forum selection clause is unenforceable.

## II.

### FACTUAL AND PROCEDURAL HISTORY

A class action was filed by Mendoza for himself and others against AOL seeking compensatory and punitive damages, injunctive relief, and restitution. The complaint alleges that real parties are former subscribers to AOL's Internet service who, over the past four years, paid between $5 and $22 each month for the service. Monthly payments were made by allowing AOL to debit automatically the credit cards of class members. The class members terminated their subscriptions to AOL but, without authorization, AOL continued to debit their credit cards for monthly service fees. Mendoza individually alleged that he gave AOL notice of the cancellation of his subscription in October 1999, but AOL continued to charge monthly fees against his credit card at least through February 2000, at which time Mendoza cancelled his credit card in order to stop the debits.

The complaint alleged separate causes of action including violations of California's Unfair Business Practices Act (first cause of action) (Bus. & Prof. Code, § 17200 et seq.), violations of California's CLRA (second cause of action) (Civ. Code, § 1770, subd. (a)(14)), common law conversion/trespass (third cause of action), and common law fraud (fourth cause of action). The complaint also prayed that the action proceed as a class action under Code of Civil Procedure section 382, Civil Code section 1781, and Business and Professions Code section 17204, and that Mendoza and the

class be awarded compensatory and punitive damages,[1] restitution, prejudgment interest, attorney fees and costs, and a permanent injunction halting AOL's practice, and requiring it to disseminate corrective notices.

Shortly thereafter, AOL filed a motion to stay or dismiss the action on the ground of inconvenient forum. As noted, the motion was based on the forum selection clause contained in the "Terms of Service" (TOS) agreement entered into between Mendoza and AOL at the time he subscribed to AOL's proprietary Internet service. The TOS, attached as exhibit A in support of AOL's motion, is a four-and-one-half-page, single-spaced, unsigned document. Paragraph 8 of the TOS entitled "LAW AND LEGAL NOTICES" states in part the following: "You expressly agree that exclusive jurisdiction for any claim or dispute with AOL or relating in any way to your membership or your use of AOL resides in the courts of Virginia and you further agree and expressly consent to the exercise of personal jurisdiction in the courts of Virginia in connection with any such dispute including any claim involving AOL or its affiliates, subsidiaries, employees, contractors, officers, directors, telecommunications providers and content providers. . . ." Additionally, paragraph 8 contained a choice of law provision designating Virginia law as being applicable to any dispute between the parties: "The laws of the Commonwealth of Virginia, excluding its conflicts-of-law rules, govern this Agreement and your membership."

In support of its motion, AOL contended the forum selection clause was presumptively valid under California law, was a rational, voluntary, and conscionable choice, and that its enforcement would not violate any strong public policy of this state. Among the legal authorities on which it relied, AOL referred to several unpublished out-of-state cases in which the clause had been previously enforced.[2]

In response, Mendoza objected to exhibit A, claiming that the document did not accurately reflect what was displayed to him when he commenced service with AOL. Instead, he described seeing displayed on his home computer monitor a "densely worded, small-size text that was hard to read on the computer screen." This objection formed the leitmotif for Mendoza's claim that the TOS was an unconscionable adhesion contract, and that under applicable rules of contract construction, the forum selection clause was

[1]The "prayer" portion of the complaint does not specifically enumerate punitive damages as a specie of relief, however, the complaint makes it clear that punitive damages are sought.

[2]Both here and in the trial court, the parties cite *unpublished* out-of-state decisions favoring their respective positions. Rule 977 of the California Rules of Court prohibits citation to our own state's unpublished opinions, thus we are hardly inclined to consider those of the Massachusetts Superior Court, federal district courts in Illinois and New York, or Florida trial courts and its Court of Appeal.

unenforceable. In addition, Mendoza contended the TOS was unreasonable and unenforceable because it necessarily required him and the putative class members to relinquish legal rights in derogation of California public policy.

On September 25, 2000, the court entered its order denying AOL's motion. After discussing several of the pertinent cases bearing on the issue, the court denied the motion finding that: 1) the forum selection clause was unfair and unreasonable because it was not negotiated, it was contained in a standard form contract, and was in a format that was not readily identifiable by Mendoza; 2) AOL had failed to carry its burden of proving that the consumer rights afforded under California law would not be diminished by enforcement of the clause; and 3) the remedies available to consumers in Virginia were not comparable to those in California.

AOL filed a petition for writ of mandamus. On November 28, 2000, we issued an order to show cause why a peremptory writ of mandamus should not issue. Thereafter, on January 4, 2001, we discharged the order to show cause as improvidently granted, and denied the petition. AOL then petitioned the Supreme Court for review. On February 28, 2001, the high court granted the petition for review, and transferred the matter back to this court with directions to issue an order to show cause why the relief requested in the petition should not be granted. On March 2, 2001, we issued a new order to show cause as directed by the Supreme Court.

III.

LEGAL DISCUSSION

A. *Standard of Review and Burden of Proof*

We begin by addressing the standard of review and which party had the burden of proof below, for even these threshold issues are disputed, and not without some muddle. In *Smith, Valentino & Smith, Inc. v. Superior Court* (1976) 17 Cal.3d 491 [131 Cal.Rptr. 374, 551 P.2d 1206] (*Smith Valentino*), a decision on a petition for writ of mandamus which will take on even greater importance in later discussion, the Supreme Court denied a request for mandamus concluding that the trial court "acted within its discretion" in upholding a contractual forum selection clause designating Pennsylvania as the proper forum. (*Id.* at p. 493.) This statement by our high court clearly implicates a review of the lower court's decision utilizing the most deferential abuse of discretion standard. This standard of review scrutinizes lower court decisions to determine if the ruling made " 'exceed[s] the bounds of reason,' " all circumstances before it being considered. (*Walker v. Superior*

*Court* (1991) 53 Cal.3d 257, 272 [279 Cal.Rptr. 576, 807 P.2d 418].) If not, the ruling will be affirmed regardless of whether the appellate court might have decided the issue differently. (*Avant! Corp. v. Superior Court* (2000) 79 Cal.App.4th 876, 881-882 [94 Cal.Rptr.2d 505].) The court in *Cal-State Business Products & Services, Inc. v. Ricoh* (1993) 12 Cal.App.4th 1666 [16 Cal.Rptr.2d 417] (*Cal-State*), described the abuse of discretion standard as one which "measures whether the act of the lower tribunal is within the range of options available under governing legal criteria in light of the evidence before the tribunal." (*Id.* at p. 1680.)

Later, in *Furda v. Superior Court* (1984) 161 Cal.App.3d 418 [207 Cal.Rptr. 646] (*Furda*), the court began its analysis of the lower court's ruling denying the defendant's motion to stay or dismiss based on forum non conveniens with the following statement: "We next consider whether the superior court abused its discretion in denying Furda's motion to stay or dismiss real parties' action on the ground of forum non conveniens and the forum selection clause." (*Id.* at p. 424.) Citing *Furda*, this division similarly began our uncharacteristically laconic opinion in *Lu v. Dryclean-U.S.A. of California, Inc.* (1992) 11 Cal.App.4th 1490 [14 Cal.Rptr.2d 906] (*Lu*), by saying "[w]e review a trial court's decision to enforce a forum selection clause for an abuse of discretion. [Citation.]" (*Id.* at p. 1493.) Thus, all of these decisions, and we trust there may be more, performed the same review with which we are charged using the abuse of discretion standard of review.

However, when faced with this question, the Sixth District, without explanation or citation to authority, commenced its discussion in *Lifeco Services Corp. v. Superior Court* (1990) 222 Cal.App.3d 331 [271 Cal.Rptr. 385] (*Lifeco*), with this pronouncement: "The issue is whether substantial evidence supports the trial court's finding that enforcement of the forum selection clause is unreasonable." (*Id.* at p. 334.)

This language from *Lifeco* was cited in *Cal-State* in support of the following proposition: "In contrast with the abuse-of-discretion standard of review applicable in a noncontractual forum non conveniens motion, a substantial-evidence standard of review applies where a forum has been selected by contract. . . ." (*Cal-State, supra*, 12 Cal.App.4th at p. 1680, citing *Lifeco, supra*, 222 Cal.App.3d at p. 334.) As we note, the *Lifeco* court did not make any distinction in the applicable standard of review based on whether the court was reviewing a contractual forum selection clause or applying traditional forum non conveniens doctrine.

Nevertheless, *Cal-State* went on to explain why a different standard of review applied depending on whether the motion to stay or to dismiss was

contractually derived: "While none of the contractual forum non conveniens cases have explicitly stated the standard of review, it is apparent from their discussion that they are de facto applying the substantial-evidence test, and there is a meaningful basis for distinction. In ruling on a forum non conveniens motion where no contract is involved, the lower tribunal decides whether or not to exercise jurisdiction based on the evidence before it in light of legally prescribed criteria. Some criteria may be present, some not; ultimately, the review does not depend upon the sufficiency of the evidence before the lower tribunal but whether it correctly applied the pertinent criteria. On the other hand, in a contractual forum non conveniens motion, the trial court *must* determine if there is sufficient evidence to satisfy the requirements for invalidating a binding contract. If the trial court finds there are facts present that satisfy these criteria, it must act in a particular way; there is no discretion involved. The reviewing court is thus involved in determining the quantum of evidence adduced, not the manner in which factors were applied. (Cf. *People* v. *Jackson* (1992) 10 Cal.App.4th 13, 22 [12 Cal.Rptr.2d 541] [deciding between abuse-of-discretion and substantial-evidence standards of review for motions contesting peremptory challenges].)" (*Cal-State*, *supra*, 12 Cal.App.4th at pp. 1680-1681, italics added.)

While we understand the distinction intended by *Cal-State*, we are not persuaded that appellate review of a contract interpretation issue can be properly analogized to review of an unambiguous forum selection clause. Nor, in light of the language contained in *Furda* and *Lu*, as well as in *Smith Valentino*, do we see justification for the *Cal-State* court's conclusion that no cases have "explicitly stated" what standard of review is applicable. Instead, given existing guidance on this question from our Supreme Court, and the more consistent line of Court of Appeal decisions, which likewise apply the abuse of discretion standard, we disagree with *Cal-State*'s conclusion that the substantial evidence standard applies instead. Therefore, we review the lower court's decision using the abuse of discretion standard.[3]

Turning to the question of which side has the burden of proof when a forum selection clause is challenged, as we have noted, the trial court in the case before us found: "[D]efendant AOL did not meet *its burden* of showing that the substantive rights afforded California plaintiffs were not diminished by enforcement of the forum selection clause." (Italics added.) Normally, the burden of proof is on the party challenging the enforcement of a contractual forum selection clause. (*Smith Valentino*, *supra*, 17 Cal.3d at p. 496; see also *Cal-State*, *supra*, 12 Cal.App.4th at p. 1680; *Lu*, *supra*, 11 Cal.App.4th at p.

---

[3]However, we note that while we adhere to the abuse of discretion standard, neither our conclusions, nor the result in this case, would change even were we to apply the less deferential substantial evidence standard.

1493.) However, the lower court assigned the burden of proof to AOL based on its conclusion that *Wimsatt v. Beverly Hills Weight etc. Internat., Inc.* (1995) 32 Cal.App.4th 1511 [38 Cal.Rptr.2d 612] (*Wimsatt*), controls this case.

▪ *Wimsatt* was an action by weight-loss center franchisees against their franchisor under California's Franchise Investment Law (FIL) (Corp. Code, § 31000 et seq.). The franchisees had signed franchise agreements which, inter alia, required them to sue in Virginia, the home state of the franchisor. (*Wimsatt, supra*, 32 Cal.App.4th at p. 1513-1514.) The trial court dismissed the complaint finding that the plaintiffs had "failed to meet their 'heavy' burden of making a 'strong' showing that enforcement of the forum selection clause would be 'so gravely difficult and inconvenient' that they would, in practical effect, be deprived of 'their day in court.' " (*Id.* at p. 1514.)[4]

In reversing, the Court of Appeal explained that in the context of that case, the customary rule assigning the burden of proof to the party challenging the enforceability of the forum selection clause did not apply. The court noted that the remedies sought by the franchisees were statutorily enumerated, and were specifically designed to protect the rights of persons purchasing and operating franchise businesses in this state. These protections included a non-waiver statute that voids provisions in a franchise agreement purporting to waive any of the protections under the FIL (Corp. Code, § 31512). (*Wimsatt, supra*, 32 Cal.App.4th at p. 1520.) The court reasoned that a franchise agreement's forum selection clause might subject California franchisees to litigation in a state that does not provide the same level of legal protections afforded by California law. Under those circumstances, enforcing the forum selection clause would effectively waive the remedies of California's FIL, thereby violating the antiwaiver component of that law. Faced with this potential, the burden of proof was on the franchisor to prove that enforcing the clause would not violate the statutory antiwaiver provision of the FIL by "diminish[ing] in any way the substantive rights afforded California franchisees under California law." (*Id.* at p. 1522.)

▪ The trial court in this case concluded that because Mendoza seeks recovery, in part, under the CLRA (Civ. Code, § 1750 et seq.), which contains a statutory anti-waiver provision like that involved in *Wimsatt*, the burden of proof was on AOL to prove that enforcement of the forum selection clause would not result in a significant diminution of rights to California consumers. We agree. In comparing the purpose and remedies afforded to California franchisees under the FIL to those afforded California

---

[4]We admit to being mystified by AOL's characterization that *Wimsatt* "applies to choice-of-law issues, not forum selection issues." Clearly, it applies to the latter.

consumers under the CLRA, we find identical policy considerations which command shifting the burden of proof here to AOL, the party seeking enforcement of the forum selection clause, as was done in *Wimsatt*.

The FIL and the CLRA were each enacted to protect the statute's beneficiaries from deceptive and unfair business practices. (Corp. Code, § 31000 et seq.; *Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1077 [90 Cal.Rptr.2d 334, 988 P.2d 67] (*Broughton*).) Each statutory scheme embodies strong remedial provisions for violations of the statute. (For remedies under the FIL, see Corp. Code, §§ 31004, 31300, 31302, 31302.5, and 31400-31405. For remedies under the CLRA, see Civ. Code, §§ 1752, 1780, subds. (a)(1)-(4), (b) & (d), 1781, & 1783.)

█ Important to the trial court's finding is the fact that the CLRA, like the FIL, embeds in its statutory scheme a provision prohibiting waivers by consumers of any of these remedies. Civil Code section 1751 warns: "Any waiver by a consumer of the provisions of this title is contrary to public policy and shall be unenforceable and void."

While the remedial aspects of each statutory scheme are indigenous to the business practices regulated, in both cases the Legislature has ensured that the rights afforded to California citizens against unfair practices cannot be diminished or avoided by contract. Where the effect of transfer to a different forum has the potential of stripping California consumers of their legal rights deemed by the Legislature to be nonwaivable, the burden must be placed on the party asserting the contractual forum selection clause to prove that the CLRA's antiwaiver provisions are not violated. For this reason we too embrace the rationale of the *Wimsatt* decision and conclude that the CLRA claim pleaded by Mendoza, like the FIL claims asserted in *Wimsatt*, mandates departure from the general rule which normally places the burden of proving unfairness or unreasonableness of the forum selection clause on the party opposed to its enforcement.

## B. *Overview of Forum Selection Clause Enforcement*

█ AOL correctly posits that California favors contractual forum selection clauses so long as they are entered into freely and voluntarily, and their enforcement would not be unreasonable. (*Smith Valentino, supra,* 17 Cal.3d at pp. 495-496.) This favorable treatment is attributed to our law's devotion to the concept of one's free right to contract, and flows from the important practical effect such contractual rights have on commerce generally. This division has characterized forum selection clauses as "play[ing] an important role in both national and international commerce." (*Lu, supra,* 11

Cal.App.4th at p. 1493.) The *Wimsatt* court similarly exhorted that "[f]orum selection clauses *are* important in facilitating national and international commerce, and as a general rule should be welcomed." (*Wimsatt, supra*, 32 Cal.App.4th at p. 1523, original italics.)

We agree with these sentiments, and view such clauses as likely to become even more ubiquitous as this state and nation become acculturated to electronic commerce. (See *Carnival Cruise Lines, Inc. v. Shute* (1991) 499 U.S. 585, 592-594 [111 S.Ct. 1522, 1527, 113 L.Ed.2d 622].) Moreover, there are strong economic arguments in support of these agreements, favoring both merchants and consumers, including reduction in the costs of goods and services and the stimulation of e-commerce.

But this encomium is not boundless. Our law favors forum selection agreements only so long as they are procured freely and voluntarily, with the place chosen having some logical nexus to one of the parties or the dispute, and so long as California consumers will not find their substantial legal rights significantly impaired by their enforcement. Therefore, to be enforceable, the selected jurisdiction must be "suitable," "available," and able to "accomplish substantial justice." (*The Bremen v. Zapata Off-Shore Co.* (1972) 407 U.S. 1, 17 [92 S.Ct. 1907, 1917, 32 L.Ed.2d 513]; *Smith Valentino, supra*, 17 Cal.3d at p. 494.)[5] ▮▮ The trial court determined that the circumstances of contract formation did not reflect Mendoza exercised free will, and that the effect of enforcing the forum selection clause here would violate California public policy by eviscerating important legal rights afforded to this state's consumers. Our task, then, is to review the record to determine if there was a rational basis for the court's findings and the choice it made not to enforce the forum selection clause in AOL's TOS agreement.

C. *Enforcement of the Forum Selection Clause Violates Strong California Public Policy*

▮▮ California courts will refuse to defer to the selected forum if to do so would substantially diminish the rights of California residents in a way that violates our state's public policy. For example, in *CQL Original Products, Inc. v. National Hockey League Players' Assn.* (1995) 39 Cal.App.4th

---

[5]"Suitability" and "availability" in this context mean that a valid judgment can be obtained in the selected forum. (*Stangvik v. Shiley Inc.* (1991) 54 Cal.3d 744, 752 [1 Cal.Rptr.2d 556, 819 P.2d 14].) Normally, this is limited to a determination that there is jurisdiction over the dispute and the statute of limitations has not expired as of the time the motion is considered. (*Chong v. Superior Court* (1997) 58 Cal.App.4th 1032, 1036-1037 [68 Cal.Rptr.2d 427].) Also, the forum must have a reasonable connection to the parties or the dispute. (*Cal-State, supra*, 12 Cal.App.4th at pp. 1681-1682.) Mendoza does not contest the attributes of Virginia as a proposed "suitable" and "available" forum.

1347 [46 Cal.Rptr.2d 412], a dispute arose following the termination of a merchandise licensing agreement between CQL Original Products, Inc. and the National Hockey League (NHL). The merchandiser's breach of contract suit in California was met with a motion filed by the NHL to dismiss based on a forum selection clause contained in the licensing agreement. (*Id.* at p. 1353.) The trial court granted the NHL's motion. In affirming the trial court's ruling, the appellate court noted that "a forum selection clause will not be enforced if to do so will bring about a result contrary to the public policy of the forum. . . ." (*Id.* at p. 1354, citing *Cal-State, supra,* 12 Cal.App.4th at p. 1680.) After reviewing the agreement in question, the court concluded there was no public policy reason to deny enforcement of the provision. (39 Cal.App.4th at p. 1356.)

In *Hall v. Superior Court* (1983) 150 Cal.App.3d 411 [197 Cal.Rptr. 757] (*Hall*), two California investors exchanged their interests in an oil and gas limited partnership in return for stock in one of their co-investors, Imperial Petroleum, Inc., a Utah corporation. Closer to the facts of this case, the contract embodying their exchange agreement contained *both* forum selection and choice of law provisions identifying Nevada as the selected forum and governing law. A dispute arose, and the two investors sued Imperial in California. (*Id.* at pp. 413-415.) Imperial asserted the forum selection clause, and the trial court found the forum selection clause was enforceable.

In reversing the lower court's decision, the appellate court undertook an examination of both the choice of law clause as well as the forum selection clause noting that the enforceability of these clauses were "inextricably bound up" in one another. (*Hall, supra,* 150 Cal.App.3d at p. 416.) The reason for considering them together was that absent a choice of law clause, the selected forum could apply California law to the dispute under the selected forum's conflict of laws principles. If so, there would be no risk that substantive law might be employed which would materially diminish rights of California residents in violation of California public policy. (*Ibid.*) However, where the effect of the transfer would be otherwise, the forum selection clause would not be enforced: "While 'California does not have any public policy against a choice of law provision, where it is otherwise appropriate' [citation] and 'choice of law provisions are usually respected by California courts . . .' [citing *Smith Valentino, supra,* 17 Cal.3d at p. 494] 'an agreement designating [a foreign] law will not be given effect if it would violate a strong California public policy . . . [or] "result in an evasion of . . . a statute of the forum protecting its citizens." ' [Citation.]" (*Hall, supra,* 150

Cal.App.3d at pp. 416-417; see also *Cal-State, supra,* 12 Cal.App.4th at p. 1680.)[6]

The *Hall* court determined that if the pending securities litigation were transferred to Nevada where Nevada law would be applied, the plaintiffs would lose the benefit of California's Corporate Securities Law of 1968, which would otherwise govern the transaction in question. This California law was designed to protect the public from fraud and deception in securities matters, by providing statutory remedies for violations of the California Corporations Code. (*Hall, supra,* 150 Cal.App.3d at p. 417.) For this reason, the remedial scheme, like the CRLA involved in this case, contains an anti-waiver provision. (Corp. Code, § 25701; *Hall, supra,* at pp. 417-418.) The court concluded: "[W]e believe the right of a buyer of securities in California to have California law and its concomitant nuances apply to any future dispute arising out of the transaction is a 'provision' within the meaning of [Corporations Code] section 25701 which cannot be waived or evaded by stipulation of the parties to a securities transaction. Consequently, we hold the choice of Nevada law provision in this agreement violates section 25701 and the public policy of this state [citation] and for that reason deny enforcement of the forum selection clause as unreasonable." (*Id.* at p. 418.)[7]

It is important to consider that the *Hall* court denied enforcement of the forum selection clause solely on the inevitability that doing so would eliminate the protections of California's Corporate Securities Law of 1968; a result prohibited by the antiwaiver feature of that law. However, it did not compare the California statutory scheme to that afforded by Nevada law to determine if the remedies provided by each were materially different.[8]

■■■ The CLRA parallels the Corporate Securities Law of 1968, at issue in *Hall,* insofar as the CRLA is a legislative embodiment of a desire to

---

[6]At oral argument, counsel for AOL suggested for the first time that a Virginia court might apply California's consumer protection law to resolve this dispute. Not only was this suggestion legally unsupported, but we find it counterintuitive to believe that a Virginia court would invoke California law to resolve a contract-based consumer dispute against a Virginia domiciliary where the parties agreed to have Virginia law applied, and where Virginia has a statutory consumer protection law of its own.

[7]The court also noted that the defendant had rejected the notion of a stipulation that, if transferred, the parties would agree to have California substantive law applied. In any case, the court cited to Nevada's own securities law (Nev. Rev. Stat., ch. 90, former § 90.200, subd. 7), which itself contained an antiwaiver provision, making it problematic whether such a stipulation would be enforced by Nevada courts once transfer occurred. (*Hall, supra,* 150 Cal.App.3d at p. 419.)

[8]*Hall* has been cited with approval by our Supreme Court in its own recent opinion on the enforceability of contractual choice of law provisions. (*Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459, 464 [11 Cal.Rptr.2d 330, 834 P.2d 1148].)

protect California consumers and furthers a strong public policy of this state. "The CLRA was enacted in an attempt to alleviate social and economic problems stemming from deceptive business practices, which were identified in the 1969 Report of the National Advisory Commission on Civil Disorders (i.e., the Kerner Commission). [Citation.] Section 1760 contains an express statement of legislative intent: 'This title shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.' " (*Broughton, supra*, 21 Cal.4th at p. 1077.)

Certainly, the CLRA provides remedial protections *at least* as important as those under the Corporate Securities Law of 1968. Therefore, by parity of reasoning, enforcement of AOL's forum selection clause, which is also accompanied by a choice of law provision favoring Virginia, would necessitate a waiver of the statutory remedies of the CLRA, in violation of that law's antiwaiver provision (Civ. Code, § 1751) and California public policy. For this reason alone, we affirm the trial court's ruling.

This conclusion is reinforced by a statutory comparison of California and Virginia consumer protection laws, which reveals Virginia's law provides significantly less consumer protection to its citizens than California law provides for our own. Consumers who prove violations of the CLRA within the three-year limitations period may be entitled to a minimum recovery of $1,000, restitution or property, power of injunctive relief, and punitive damages. (Civ. Code, §§ 1780, subd. (a)(1)-(4), 1783.) Attorney fees and costs are also recoverable if the plaintiffs prevail on their claim under the act.[9] (*Id.*, § 1780, subd. (d).) In addition to these extraordinary remedies, if the complaining consumer is a senior citizen or disabled person, up to $5,000 may be awarded for substantial physical, emotional distress, or economic damage. (*Id.*, § 1780, subd. (b).) Of course, the CLRA specifies that actions under that act may be prosecuted as class actions. (*Id.*, §§ 1752, 1781.)[10]

---

[9]Unlike other provisions of the Civil Code (§ 1717), a defendant's right to recover attorney fees and costs is not reciprocal unless the court finds that the plaintiff did not prosecute the claim against the defendant in good faith (*id.*, § 1780, subd. (d)).

[10]The focus of the parties' comparisons appears to relate to the CLRA. Mendoza's complaint also includes a cause of action under California's unfair competition law (Bus. & Prof. Code, § 17200 et seq.), which shares some remedial similarities with the CLRA, including a private right to sue as a class action (*Reese v. Wal-Mart Stores, Inc.* (1999) 73 Cal.App.4th 1225 [87 Cal.Rptr.2d 346]), recovery of restitution and injunctive relief (Bus. & Prof. Code, § 17203; *Schnall v. Hertz Corp.* (2000) 78 Cal.App.4th 1144 [93 Cal.Rptr.2d 439]), plus enhanced remedies for senior or disabled persons (Bus. & Prof. Code, § 17206.1). But neither actual damages nor attorney fees are recoverable. (*Cortez v. Purolator Air*

Virginia also has a statutory scheme denominated the Virginia Consumer Protection Act of 1977 (VCPA) (Va. Code Ann. § 59.1-196). The purpose of the VCPA is to "promote fair and ethical standards of dealings between suppliers and the consuming public." (*Id.*, § 59.1-197.) The panoply of prohibited acts appears to be as comprehensive as those under the CLRA, and covers the specific misconduct by AOL alleged in Mendoza's complaint. (*Id.*, § 59.1-200.) Under the VCPA, individuals are entitled to sue and recover actual damages, or a minimum of $500, whichever is greater. If willful misconduct is proved, the minimum damages increase to $1000. Attorney fees and costs "may" be awarded. (*Id.*, § 59.1-204, subd. B.) Restitution is also available. (*Id.*, § 59.1-205.) However, if the violation is determined to be "unintentional,"[11] the only remedies obtainable are restitution and attorney fees and court costs. (*Id.*, § 59.1-207.) The Virginia act has a two-year limitations period. (*Id.*, § 59.1-204.1, subd. A.)

The parties disagree whether, and to what extent, private injunctive relief is available under the VCPA. The applicable statute (Va. Code Ann. § 59.1-203) is somewhat ambiguous. However, at bottom we agree with AOL that a more reasonable reading of the statute appears to support injunctive relief for individuals, although we do not agree that the law allows private persons to obtain injunctive relief on behalf of others similarly situated.[12] In this respect injunctive relief afforded by the CLRA is unique, as its purpose is not simply to correct future private injury but to remedy a public wrong. As explained by our Supreme Court in *Broughton, supra*, 21 Cal.4th at page 1080: "Whatever the individual motive of the party requesting injunctive relief, the benefits of granting injunctive relief by and large do not accrue to that party, but to the general public in danger of being victimized by the same deceptive practices as the plaintiff suffered. . . . In other words, the plaintiff in a CLRA damages action is playing the role of a bona fide private attorney general. [Citation.]" (Fn. omitted.)

*Filtration Products Co.* (2000) 23 Cal.4th 163 [96 Cal.Rptr.2d 518, 999 P.2d 706]; *Cal-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163 [83 Cal.Rptr.2d 548, 973 P.2d 527].)

[11]As may be relevant here, "unintentional" for purposes of the VCPA means "the alleged violation resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid a violation . . . ." (Va. Code Ann. § 59.1-207.)

[12]Virginia Code Annotated section 59.1-203 is comprised of four subdivisions, three of which clearly discuss and are limited to the rights of public entities, acting through public counsel, to seek orders restraining violations of the VCPA for the benefit of the public. However, subdivision C states without qualification "[t]he circuit courts are authorized to issue temporary or permanent injunctions to restrain and prevent violations of [section] 59.1-200." It would be needless duplication to recite the authority of the courts to enjoin misconduct in subdivision C if it were intended to apply only to public entities and not individual actions. However, we see nothing in the statute that allows private individuals to seek injunctive relief for the benefit of others. That authority appears to be reserved to the discretion of public officers under subdivisions A, B and D.

Of greater importance is the absence of any provision in the VCPA that allows suits under the act to proceed as class actions. Unless specifically allowed by statute, class action relief is not generally available in Virginia in actions at law. (*King v. Va. Birth-Related Neurological Injury Compensation Program* (1990) 22 Va. Cir. 156 [1990 WL 751353]); *Kuhn v. West Alexandria Properties, Inc.* (1980) 22 Va. Cir. 439.)[13]

In contrast to Virginia consumer law's ostensible hostility to class actions, the right to seek class action relief in consumer cases has been extolled by California courts. A notable example is the opinion in *Vasquez v. Superior Court* (1971) 4 Cal.3d 800 [94 Cal.Rptr. 796, 484 P.2d 964] (*Vasquez*), in which the Supreme Court considered the question of whether consumers could pursue a class action for restitution for fraud in connection with a now-infamous installment purchase contract scheme to sell freezers and frozen meat to California consumers. (*Id* at p. 812.)[14] Justice Mosk, writing for a unanimous Supreme Court, first noted that "[p]rotection of unwary consumers from being duped by unscrupulous sellers is an exigency of the utmost priority in contemporary society." (*Id.* at p. 808.) Using memorable prose, Justice Mosk then explained the importance of class actions as an instrumentality of consumer protection: "Frequently numerous consumers are exposed to the same dubious practice by the same seller so that proof of the prevalence of the practice as to one consumer would provide proof for all. Individual actions by each of the defrauded consumers is often impracticable because the amount of individual recovery would be insufficient to justify bringing a separate action; thus an unscrupulous seller retains the benefits of its wrongful conduct. A class action by consumers produces several salutary by-products, including a therapeutic effect upon those sellers who indulge in fraudulent practices, aid to legitimate business enterprises by curtailing illegitimate competition, and avoidance to the judicial process of the burden of multiple litigation involving identical claims. The benefit to the parties and the courts would, in many circumstances, be substantial." (*Ibid.*)

That this view has endured over the last 30 years is of little surprise given the importance class action consumer litigation has come to play in this

---

[13]We disagree with AOL that the omnibus section of the VCRA entitled "Additional Relief" (Va. Code Ann. § 59.1-205), which reserves to the courts the right to make additional orders restoring money or property to "any identifiable person" acquired in violation of the act, can be properly read to allow of consumer class actions. Our conclusion is confirmed by the fact that where the Virginia Legislature intends to allow for class action relief in actions at law, it has done so explicitly. (See *id.*, § 55-79.53; *Kuhn v. West Alexandria Properties, Inc.*, *supra*, 22 Va. Cir. 439.)

[14]Coincidentally, while that case was pending, the CLRA was passed by the Legislature. (*Vasquez, supra*, 4 Cal.3d at pp. 817-818.)

state. In light of that history, we cannot accept AOL's assertion that the elimination of class actions for consumer remedies if the forum selection clause is enforced is a matter of insubstantial moment.[15] The unavailability of class action relief in this context is sufficient in and by itself to preclude enforcement of the TOS forum selection clause.

In addition to the unavailability of class actions and the apparent limitation in injunctive relief, neither punitive damages, nor enhanced remedies for disabled and senior citizens are recoverable under Virginia's law. More nuanced differences are the reduced recovery under the VCPA for "unintentional" acts, a shorter period of limitations, and Virginia's use of a Lodestar formula alone to calculate attorney fees recovery. (*Holmes v. L.G. Marion Corp.* (1999) 258 Va. 473 [521 S.E. 2d 528, 533-534].)[16] Quite apart from the remedial limitations under Virginia law relating to injunctive and class action relief, the cumulative importance of even these less significant differences is substantial. Enforcement of a forum selection clause, which would impair these aggregate rights, would itself violate important California public policy. For this additional reason the trial court was correct in denying AOL's motion to stay or to dismiss.[17]

In so holding we reject Mendoza's contention that the clause should not be enforced simply because it would be patently unreasonable to require him or other AOL customers who form the putative class to travel to Virginia to litigate the relatively nominal individual sums at issue. He points out that in 1998 and 1999, not a single suit by a non-Virginia resident appears to have been filed in AOL's Virginia home county, a development Mendoza suggests is directly related to the fact that the cost of prosecuting a claim in

[15]AOL argues that the unavailability of class action relief in Virginia is not a material difference as compared to California law, and in support cites to a published Maryland case, *Gilman v. Wheat, First Securities, Inc.* (1997) 345 Md. 361 [692 A.2d 454], which enforced a forum selection clause in favor of Virginia. But this case is of limited value here. First, *Gilman* obviously did not involve California law in the slightest, nor did the Maryland court purport to analyze California public policy. Second, the court found the difference between Maryland law (which allows class actions) and Virginia (which does not) to be inconsequential because the issue of the forum selection arose in the context of an arbitration clause and not a consumer action at law. (692 A.2d at pp. 454-465.)

[16]California allows for the use of multiples to enhance the fees recovered in consumer litigation (in addition to the greater recovery incident to consumer class actions suits). (*Lealao v. Beneficial California Inc.* (2000) 82 Cal.App.4th 19, 49-50 [97 Cal.Rptr.2d 797].) The ability to recover these costs is integral to making the CLRA effective by increasing the financial feasibility of bringing actions under the statute. (*Broughton, supra,* 21 Cal.4th at p. 1086.)

[17]Because we affirm on other grounds, we need not decide whether the trial court correctly concluded that the TOS was an unconscionable adhesion contract (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 [99 Cal.Rptr.2d 745, 6 P.3d 669]), or Mendoza's alternative contention that the forum selection clause is unenforceable because it was induced by fraud.

Virginia vastly exceeds the amounts normally at issue in individual claims against AOL.

 But the additional cost or inconvenience necessitated by litigation in the selected forum is not part of the calculus when considering whether a forum selection clause should be enforced. Our Supreme Court has put this matter to rest in *Smith Valentino* when it quoted: " 'Mere inconvenience or additional expense is not the test of unreasonableness since it may be assumed that the plaintiff received under the contract consideration for these things.' [Citation.]" (*Smith Valentino, supra,* 17 Cal.3d at p. 496; see also *Furda, supra,* 161 Cal.App.3d at pp. 426-427.)

 Yet Mendoza contends that *Smith Valentino*'s admonition not to consider convenience and cost in evaluating the validity of forum selection clauses applies only where there remains a "practical option [of travel to the selected forum] in terms of the expense and value of the controversy." As we understand it, Mendoza is arguing that expense in litigating in the selected forum can be considered if it exceeds the amount in controversy or at least renders the choice to litigate "impractical."

We disagree that *Smith Valentino* can be read so narrowly. No case of which we are aware has interpreted this language as Mendoza suggests we should. Moreover, it is not at all clear what monetary amount was in dispute in that case, or whether it was "practical" to bring the litigation in the selected forum. Although the current dispute between Mendoza and AOL might make it impractical for Mendoza to pursue an individual claim in Virginia, there may be other potential disputes between Mendoza and AOL arising from their relationship which would have significantly greater value. Are we to parse the enforceability of the forum selection clause, then, based on the economic value of the particular claim in issue, so that the clause can be enforced some of the time (depending on the value of the claim), but not all of the time? If so, should trial courts use an objective standard, or consider the proclivities of the individual claimant who may not feel litigation in the selected forum is worth it? How should trial judges calculate the costs of litigation?[18] Should they consider the extent to which the selected forum allows for the recovery of costs, including travel-related expenses? Should courts compute the extent to which extraordinary costs in enforcing contractual rights are included in the consideration paid for the goods or services purchased? (See *Smith Valentino, supra,* 17 Cal.3d at p. 496.)

[18]While it takes no imagination in this case to see how even a year's worth of wrongful debit charges may not justify a trip to Virginia, should courts consider to what extent expenses can be mitigated by careful litigation management? (See *Smith Valentino, supra,* 17 Cal.3d at p. 496.)

. As can be seen, in addition to reading a limitation in our Supreme Court's opinion which is not warranted, the practical problems in accepting Mendoza's restricted reading of *Smith Valentino* are formidable, and will ensnare trial courts in endless proceedings during which these factors would be argued and weighed. It was perhaps just such a concern that, in part, moved the Supreme Court to pronounce costs and convenience "[are] not the test of reasonableness [of forum selection clauses]." (*Smith Valentino*, *supra*, 17 Cal.3d at p. 496.)

We also reject AOL's suggestion made at oral argument that this conclusion is inconsistent with our Supreme Court's decision in *Broughton*. That opinion holds only that remedies under the CLRA are arbitrable so long as the substantive rights of the plaintiffs are not impaired. Indeed, because claims for injunctive relief cannot be arbitrated, the court ordered the arbitrable causes of action severed from the court action. (*Broughton*, *supra*, 21 Cal.4th at p. 1072.)

Similarly, our holding is unaffected by the recent Supreme Court decision in *Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906 [103 Cal.Rptr.2d 320, 15 P.3d 1071] (*Washington Mutual*). That case concerns what procedurally must be done by trial courts considering whether to certify a national class action where the dispute arises out of a contract containing a foreign choice of law provision. Relying on its earlier opinion in *Nedlloyd Lines B.V. v. Superior Court*, *supra*, 3 Cal.4th 459, the Supreme Court directed trial courts to perform a choice of law analysis as part of the national class certification process. (*Washington Mutual*, *supra*, 24 Cal.4th at pp. 915-916.) As part of that analysis, courts must determine if the substantive law of the selected forum is in conflict with a " 'fundamental public policy of California.' " (*Id.* at p. 916, italics omitted.) If so, the choice of law provision is not to be enforced if California has an interest in having its own law applied to the dispute. (*Id.* at pp. 916-917.) If relevant at all, the legal principles underlying both *Nedlloyd* and *Washington Mutual* are entirely consistent with our opinion.

Lastly, we are also unpersuaded by AOL's contention that the trial court erred in not granting AOL's request for a stay of the California action to allow the Virginia court to determine whether the relief available to Mendoza in consistent with California consumer law. AOL claims that if the Virginia court found inconsistency, the California court could then reassert jurisdiction, deny enforcement of the forum selection clause, and allow Mendoza to proceed in the California forum. We reject this claim because: 1) it is unnecessary for us to defer our decision until a Virginia course clarifies its consumer law, for we do not find Virginia consumer law to be

nearly as opaque as suggested by counsel for AOL; 2) AOL suggests no procedural device which would allow a California court to proceed with the underlying case after a Virginia court has ruled (see U.S. Const., art. IV, § 1); and 3) a stay would take an already financially impractical legal dispute and compound the expense to resolve it by necessitating perhaps *two* lawsuits.

## IV.

### DISPOSITION

The order to show cause is discharged and the petition for writ of mandate is denied. Costs are awarded to Mendoza.

Haerle, Acting P. J., and Lambden, J., concurred.

On July 10, 2001, the opinion was modified to read as printed above. Petitioner's petition for review by the Supreme Court was denied October 17, 2001. Kennard, J., was of the opinion that the petition should be granted.