Filed 5/23/23  Amyris v. Lavvan CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| AMYRIS, INC.,<br>Plaintiff and Appellant,<br>v.<br>LAVVAN, INC. et al.,<br>Defendants and Respondents. | A165829<br><br>(Alameda County<br>Super. Ct. No.<br>22CV008391) |

In 2019, Amyris, Inc. (Amyris), a California corporation, entered into an agreement with Lavvan, Inc. (Lavvan), a Delaware corporation, to biosynthetically develop chemicals found in cannabis for commercial use—a project that, had it been successful, reportedly would have yielded hundreds of millions of dollars.  It was not successful, and in 2020 Lavvan filed suit in the Southern District of New York, alleging breach of contract and infringement of its intellectual property, seeking over $880 million in damages, a lawsuit that proceeds to this day.

Meanwhile, Amyris filed suit in Alameda County, alleging it had discovered that Lavvan officers and employees had recorded eight calls and meetings between the parties, in violation of the California Invasion of Privacy Act (Pen. Code, § 630 et seq.), and seeking the $5,000 statutory penalty for each of the eight recordings.  Lavvan moved to transfer the case to

1

New York pursuant to a forum selection clause that "[a]ny dispute arising out of this Agreement shall be submitted exclusively" to that state. The trial court granted the motion, and Amyris appeals, asserting that: (1) the forum selection clause is inapplicable to its claim, and (2) enforcement of the forum selection clause would foreclose any justice for Amyris. We affirm.

## BACKGROUND

**The Parties and Their Relationship**

Plaintiff and appellant Amyris is a publicly held synthetic biology company, headquartered in Emeryville, California. Defendant and respondent Lavvan is a Delaware corporation, with its principal place of business in New York.

In March 2019 Amyris and Lavvan entered into a research, collaboration, and license agreement to biosynthetically develop chemicals found in cannabis plants, known as cannabinoids, for commercial use (RCL Agreement), an extensive 49-page agreement describing the project in great detail. As pertinent here, the RCL Agreement had a forum selection clause and a choice of law provision that said, "This Agreement shall be construed in accordance with, and governed by, the laws of the State of New York, without regard to the conflicts of law provisions thereof. . . . Any dispute arising out of this Agreement shall be submitted exclusively to any state or Federal court located in New York County, New York, without restricting any rights of appeal."

Problems arose, and in September 2020 Lavvan filed suit in the United States District Court, Southern District of New York: *Lavvan, Inc. v. Amyris, Inc.* (S.D.N.Y, Sep. 10, 2020, No. 20-cv-07386-JPO) 2021 WL 3173054 (the New York lawsuit). The New York lawsuit alleged breach of the RCL

2

Agreement and infringement on Lavvan's intellectual property rights, and sought over $880 million in damages.

The complaint in the New York lawsuit began with a quote attributed to Amyris CEO John Melo, the introduction beginning as follows:

"**I.     Introduction**

"Not one partner has ever stood with us and said, *We're only going to do what the contract says. . . .* if that ever happened, we would be out of business today . . . ."

The introduction continued with these five paragraphs:

"1.     This case seeks to remedy the predictable consequences that stem from a business partner's view that it need not concern itself with the terms of the agreement it entered, and from that partner's deliberate decision to misappropriate valuable intellectual property entrusted to it under that agreement for its own gain.

"2.     In 2019, Amyris addressed its short-term woes by publicly announcing that it would be entering a new industry by forming a promising exclusive partnership with Lavvan and securing from Lavvan a much-needed multi-million-dollar cash influx. Amyris then quickly proceeded to denounce the deal's terms privately and to try to change and frustrate—and ultimately breach—those terms, all at the expense of Lavvan and its investors. In fact, Amyris has rejected the agreement's most fundamental terms so thoroughly that Amyris evidently never meant to honor the contract at all. In the course of repudiating the agreement, Amyris misappropriated Lavvan's trade secrets and used intellectual property licensed exclusively to Lavvan to compete against, rather than collaborate with, its supposed partner.

"3.     Amyris apparently saw the contract as a short-term fix for its deep and dire financial troubles—as Amyris's CEO would come to describe it,

3

the deal was a decision for Amyris to 'cut off its arm to save its body.' The news of Amyris's potentially lucrative partnership with Lavvan, in a rapidly growing and extremely attractive industry (biosynthetic cannabinoids), would stave off investors' worries about the company's hundreds of millions of dollars in losses, crushing debt load, and languishing stock price. But to get the deal it wanted to announce, Amyris had to agree to give Lavvan exclusive rights to valuable intellectual property, as well as control over decision about how and when the partnership would commercialize its collaborative research and development.

"4.  As Lavvan came to learn, ceding such control threatens to expose the rotten core of Amyris's business, which has long depended on accounting schemes designed to hide massive manufacturing losses Amyris quietly absorbs in the development of its products. These schemes allow Amyris to portray itself as a leading player in the field of biotechnology, even while its financials tell a very different story of a company that cannot seem to turn a profit.

"5.  Accordingly, after having secured the benefits of Lavvan's upfront $10 million payment and the positive stock-market effects of announcing its partnership, Amyris now hopes to ignore its contractual obligations, seize for itself Lavvan's rights, and usurp for itself all of the benefits of the partnership—in flagrant violation of Lavvan's intellectual property rights and the Parties' operative agreement."

The complaint in the New York lawsuit went on to allege several specific conversations and meetings it claimed supported its position, including these three:

(1)  On February 23, 2020, Amyris's CEO Melo informed Neil Closner, Lavvan's CEO, that the Amyris board was looking for a way out of

4

the binding deal Amyris entered with Lavvan, and that one of Amyris's options was for it to simply proceed to commercialize cannabinoids without Lavvan, in violation of the RCL Agreement. Melo threatened that unless Lavvan would agree to change the deal and accept whatever new terms Amyris demanded, Amyris would commercialize cannabinoids on its own and leave Lavvan behind. In short, that Amyris threatened to take Lavvan's intellectual property and use it for Amyris's own purposes unless Lavvan acceded to Amyris's demands.

(2) An April 6, 2020 conversation in which Closner objected to Melo's demands that Lavvan make or sign contradictory statements for Amyris, one representing that Amyris was working to develop the controlled substance THC and one representing it was not.

(3) An April 14, 2020 meeting at which Melo told Lavvan that Amyris would breach the parties' agreement if Lavvan did not accede to Amyris's demands about the timing of the manufacturing and commercialization process.

As confirmed at oral argument, the New York lawsuit proceeds.

Meanwhile, Amyris filed the lawsuit that led to the appeal here.

**The Proceedings Below**

On March 15, 2022, Amyris filed a complaint against Lavvan, Closner, and Does 1–25, alleging that in or around November 2021 it learned that at least eight of the meetings or conversations between representatives of the parties "had been recorded surreptitiously by Lavvan employees, including upon information and belief, Closner and the Doe Defendants." The eight meetings listed included the three described above. The complaint alleged that the recordings with Amyris's officers and employees were made without their knowledge or consent, in violation of Penal Code section 630 et seq., the

5

California Invasion of Privacy Act (CIPA). And the complaint sought the statutory penalty of $5,000 for each of the eight violations, specifically stating it was not seeking in excess of $75,000, expressly alleging therefore that the suit could not be removed to Federal Court.

On May 11, Lavvan and Closner filed a motion to dismiss the complaint on forum non conveniens grounds pursuant to Code of Civil Procedure sections 410.30, subdivision (a) and 418.10, subdivision (a)(2). The motion was based on the last section of the RCL Agreement, Section 16, which provided in pertinent part that "Any dispute arising out of this Agreement shall be submitted exclusively to any state or Federal court located in New York County, New York."

Amyris filed opposition to the motion that was brief indeed, a total of six pages. Following a recitation of the background, that opposition began as follows:

"**III. LEGAL STANDARD**

"California courts will enforce 'contractual forum selection clauses so long as they are entered into freely and voluntarily, and their enforcement would not be unreasonable.' (*Am. Online, Inc. v. Superior Ct.* (2001) 90 Cal.App.4th 1, 11 [citation omitted].) However, 'California courts will refuse to defer to the selected forum if to do so would substantially diminish the rights of California residents in a way that violates our state's public policy.' (*Id.* at p. 12.) In other words, 'to be enforceable, the selected jurisdiction must be "suitable," "available," and able to "accomplish substantial justice." ' (*Ibid.* [citations omitted].) [¶] . . . [¶]

"Enforcement of the forum selection clause under the specific circumstances present here would contravene the state's public policy and is therefore improper. (See *Am. Online, Inc.*, *supra*, 90 Cal.App.4th at p. 12.)

6

This is the case *even if* Section 16 of the Agreement applies to Defendants' conduct in illegally recording Amyris employees in direct violation of CIPA." (Footnote No. 2 omitted.)

Footnote No. 2 read in its entirety as follows: "Although Defendants' Motion is most obviously improper because application of the forum selection clause would contravene California public policy, Defendants' Motion alternatively fails because the forum selection clause in the parties' RCL Agreement covers only contract interpretation disputes—not quasi-tort claims, such as the one Amyris brings in this case pursuant to CIPA. The forum selection clause at issue here is narrow and covers only those controversies or disputes 'arising out of this Agreement.' California courts have interpreted this 'arising out of' language as more limited in scope than contract provisions that use language like 'arising out of *or relating to* this agreement' or 'arising *in connection with* the agreement.' (*Rice v. Downs* (2016) 248 Cal.App.4th 175, 186–187 . . . .) These broader phrases 'might thus cover misconduct arising out of the agreement as well as contractual issues,' (*Id.* at p. 186) but the narrow forum selection clause here is limited to issues of contract."

Lavvan filed a reply, and the matter came on for hearing on July 20, prior to which the court had entered a tentative ruling granting the motion and staying the case. And at the conclusion of the hearing the court announced it would affirm the tentative ruling, and entered its order and an amended order granting the motion and staying the case, holding as follows:

"The Motion to Dismiss filed by NEIL CLOSNER, LAVVAN, INC. on 5/11/2022 is Granted.

"Defendants' Motion to Dismiss on Forum Non Conveniens Grounds is GRANTED, as follows.

7

"Plaintiff Amyris, Inc. and Defendant Lavvan, Inc. entered a 'Research, Collaboration and License Agreement' ('the RCL Agreement') that contains (at section 16) a forum selection clause. The forum selection clause provides that any dispute 'arising out of this agreement' shall be submitted exclusively to a state or federal court located in New York County, New York.

"Plaintiff alleges that during the course of the parties' business relationship resulting from the RCL Agreement, Defendant recorded communications by Plaintiff's employees without their knowledge in violation of Penal Code § 632 et seq. [Citations.] The language of the forum selection clause (i.e., that it covers any dispute 'arising out of this agreement') encompasses all claims arising from or related to the RCL Agreement, regardless of how they are characterized. (See *Olinick v. BMG Entertainment* (2006) 138 Cal.App.4th 1286, 1296–1301 [(*Olinick*)].) Plaintiff's claims in this case arise from and are related to the RCL Agreement, because they involve alleged conduct by Lavvan Inc. and its employees, acting within the scope of their employment, during the course of the business relationship with Plaintiff resulting from the RCL Agreement. Plaintiff's claims, therefore, are subject to the forum selection clause. [¶] . . . [¶]

"A forum selection clause is presumed valid and will be enforced unless the plaintiff shows that enforcement of the clause would be unreasonable under the circumstances of the case. (See *Korman v. Princess Cruise Lines, Ltd.* (2019) 32 Cal.App.5th 206, 213.)

"Plaintiff contends it would be unreasonable to enforce the forum selection provision (in conjunction with the provision that the RCL Agreement will be governed by New York law) because New York law does not have a law equivalent to Penal Code § 632 et seq. But parties are free to enter agreements with forum selection clauses and choice of law provisions

that waive rights under state law unless the applicable state law contains an anti[-]waiver provision.  (See *Olinick*, *supra*, 138 Cal.App.4th at [p.] 1304; see also *Net2Phone Inc. v. Superior Court* (2003) 109 Cal.App.4th 583, 589.)  Plaintiff cites no provision of the California Invasion of Privacy Act, Penal Code § 630 et seq., that prohibits parties from contractually waiving any rights under that Act.

"*Kearney v. Salomon Smith Barney Inc.* (2006) 39 Cal.4th 95, cited by Plaintiff, is not applicable to this motion because it did not involve a contractual forum selection clause, as the parties entered here.

"In its Notice of Motion, Defendants request the Court to dismiss this case.  The Court declines to do so at this time.  Instead, the Court STAYS this action to allow Plaintiff to refile its claims against Defendants (under any applicable statutory or common law basis it chooses) in a New York court.  (See Code of Civil Procedure § 418.10[, subd.] (a)(2) and *Olinick*, *supra*, 138 Cal.App.4th at [p.] 1305.)"

On August 5, Amyris filed its appeal from the order.

**DISCUSSION**

**Introduction**

Amyris makes two arguments in its appeal:  (1) the forum selection clause is inapplicable to its CIPA claim, and (2) enforcement of the forum selection clause would foreclose any justice for Amyris.  We conclude that neither has merit.  But before setting forth the reasons why, we begin with some principles governing the setting here.

**Some Governing Principles and the Standard of Review**

Forum selection clauses may be either permissive or, as here, mandatory, providing that any dispute "shall be submitted."  As our colleagues in Division Five confirmed, a mandatory clause is ordinarily given

9

effect, with the only question being "whether enforcement of the clause would be unreasonable." (*Intershop Communications AG v. Superior Court* (2002) 104 Cal.App.4th 191, 196 (*Intershop*), citing *Smith, Valentino & Smith, Inc. v. Superior Court* (1976) 17 Cal.3d 491, 495–496 (*Smith Valentino*); accord, *Korman v. Princess Cruise Lines, Ltd.*, *supra*, 32 Cal.App.5th at p. 213.) And Amyris, the party opposing enforcement of the forum selection clause bears a "substantial burden" of proving that enforcement would be unreasonable under the circumstances. (*CQL Original Prods., Inc. v. NHL Players' Assn.* (1995) 39 Cal.App.4th 1347, 1354–1355 (*CQL*).)

As to the standard of review, we discussed the subject at length in *America Online, Inc. v. Superior Court* (2001) 90 Cal.App.4th 1 (*Am. Online*), an appeal by defendant AOL that had lost in the trial court, which had denied AOL's motion to transfer the case to Virginia. We began our discussion as follows:

"A.     *Standard of Review and Burden of Proof*

"We begin by addressing the standard of review and which party had the burden of proof below, for even these threshold issues are disputed, and not without some muddle. In *Smith Valentino* . . . [, *supra*,] 17 Cal.3d 491, a decision on a petition for writ of mandamus which will take on even greater importance in later discussion, the Supreme Court denied a request for mandamus concluding that the trial court 'acted within its discretion' in upholding a contractual forum selection clause designating Pennsylvania as the proper forum. (*Id.* at p. 493.) This statement by our high court clearly implicates a review of the lower court's decision utilizing the most deferential abuse of discretion standard. . . .

"Later, in *Furda v. Superior Court* (1984) 161 Cal.App.3d 418 (*Furda*), the court began its analysis of the lower court's ruling denying the

defendant's motion to stay or dismiss based on forum non conveniens with the following statement: 'We next consider whether the superior court abused its discretion in denying Furda's motion to stay or dismiss the real parties' action on the ground of forum non conveniens and the forum selection clause.' (*Id*. at p. 424.) Citing *Furda*, this division similarly began our uncharacteristically laconic opinion in *Lu v. Dryclean-U.S.A. of California, Inc.* (1992) 11 Cal.App.4th 1490 (*Lu*), by saying 'we review a trial court's decision to enforce a forum selection clause for an abuse of discretion. [Citation.]' (*Id*. at p. 1493.) Thus, all of these decisions, and we trust there may be more, performed the same review with which we are charged using the abuse of discretion standard of review." (*Am. Online, supra*, 90 Cal.App.4th at pp. 7–8.)

Then, following discussion of a case holding to the contrary (*Am. Online*, at pp. 8–9), we concluded as follows:

"While we understand the distinction intended by *Cal-State* [*Business Products & Services, Inc. v. Ricoh* (1993) 12 Cal.App.4th 1666 (*Cal-State*)], we are not persuaded that appellate review of a contract interpretation issue can be properly analogized to review of an unambiguous forum selection clause. Nor, in light of the language contained in *Furda* and *Lu*, as well as in *Smith Valentino*, do we see justification for the *Cal-State* court's conclusion that no cases have 'explicitly stated' what standard of review is applicable. Instead, given existing guidance on this question from our Supreme Court, and the more consistent line of Court of Appeal decisions, which likewise apply the abuse of discretion standard, we disagree with *Cal-State's* conclusion that the substantial evidence standard applies instead. Therefore, we review the lower court's decision using the abuse of discretion standard." (*Am. Online, supra*, 90 Cal.App.4th at p. 9.)

11

Our Supreme Court has held that a trial court's discretion on a motion is accorded "substantial deference" (*Stangvik v. Shiley Inc.* (1991) 54 Cal.3d 744, 751), and the leading appellate commentary states that among the issues subject to abuse of discretion review are rulings on motions based of forum non conveniens. (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2022) ¶ 8:104, pp. 8-66 to 8-67, citing among other cases *Investors Equity Life Holding Co. v. Schmidt* (2011) 195 Cal.App.4th 1519, 1528.)

Despite its citation to *Am. Online* in the trial court, Amyris ignores our holding in the case, and asserts that "Whether the appropriate standard of review for a decision on the enforceability of a forum selection clause is abuse of discretion or substantial evidence is a matter of dispute among the California appellate courts. (See, e.g., *Ryze Claim Solutions, LLC v. Superior Court* (2019) 33 Cal.App.5th 1066, 1069 [' "[T]here is a split of authority regarding the appropriate standard of review on whether a forum selection clause should be enforced through a motion to dismiss for forum non conveniens." [Citation.] The majority of cases apply the abuse of discretion standard, not the substantial evidence standard].)' "[1]

---

[1] Relying in part on *Am. Online*, this is what Eisenberg says about the so-called split of authority: **"Ruling based on contractual forum selection?** Some courts have distinguished between traditional forum non conveniens cases and contractual forum non conveniens cases (where the motion to stay or dismiss is based on a contractually-selected forum), concluding that a substantial evidence standard of review applies in the latter situation. [Citations.]

"This view, however, has been strongly criticized: '[G]iven existing guidance on this question from our Supreme Court, and the more consistent line of Court of Appeal decisions, which likewise apply the abuse of discretion standard, we disagree with [the] conclusion that the substantial evidence standard applies instead.' [*Am. Online, supra,* 90 Cal.App.4th 1, 9; other

12

Abuse of discretion is, of course, a high bar for Amyris to meet, requiring it to show that the trial court's ruling "is 'so irrational or arbitrary that no reasonable person could agree with it.' " (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773; *In re White* (2020) 9 Cal.5th 455, 470 ["arbitrary or irrational"].) That hardly describes the trial court's order here. And to the extent Amyris's brief can even be read to attempt to demonstrate such abuse, it falls far short.

In any event, Amyris's argument fails no matter what the standard of review.

**The Forum Selection Clause Applies**

As noted, Amyris's first argument is that the forum selection clause is inapplicable. As a threshold matter, Lavvan contends that the argument is not properly before us, as Amyris did not make it below and it is therefore forfeited. Amyris responds that it was, in claimed support of which it points to footnote 2 in its opposition below, which we quoted above.

If this footnote is a manifestation of a sufficient argument supported by legal authority, it comes in a novel guise. And it certainly does not meet Amyris's advocacy obligations, as held by *Holden v. City of San Diego* (2019) 43 Cal.App.5th 404 (*Holden*), where the court concluded that by making argument in footnotes, appellant Holden "waived or forfeited [an] argument both in the trial court and on appeal." (*Holden*, at p. 418.) This is how the court put it: " 'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived.' [Citation.] Alternatively stated, '[w]here a point is merely asserted by [appellant] without any [substantive] argument of or authority

citations omitted.]' " (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs, *supra*, ¶ 8:104a.)

for its proposition, it is deemed to be without foundation and requires no discussion.' [Citation.] 'Issues do not have a life of their own: if they are not raised or supported by [substantive] argument or citation to authority, we consider the issues waived.' [Citations.] The record shows that Holden raised Government Code section 65863 in the trial court only in a footnote in his opening brief and without any substantive legal analysis. . . . Because Holden did not adequately raise and discuss . . . the issue in the trial court, he is precluded from raising that issue on appeal. [Citations.]" (*Holden*, *supra*, 43 Cal.App.5th at pp. 418–419.)

But even if the argument is not forfeited, it has no merit.

We begin our discussion with the observation that "arising out of" is not a phrase foreign to California jurisprudence, as it is a phrase that has been discussed and applied in numerous California cases involving various subjects—cases, we note, devastating to Amyris's position here.

For example, the phrase "arising out of" frequently appears in attorney fee cases where the issue is whether a prevailing party is entitled to attorney fees for noncontract claims. The cases hold that the answer turns on the language in the contract provision, and whether it is broad enough to show the parties intended the fee clause to apply to noncontract claims—and hold that "arising out of" is such a broad provision. The following are illustrative: *Hemphill v. Wright Family, LLC* (2015) 234 Cal.App.4th 911, 914 ["arising out of tenancy" language sufficiently broad to cover premises negligence claim]; *Johnson v. Siegel* (2000) 84 Cal.App.4th 1087, 1100–1101 ["arising out of [agreement]" language in real estate purchase agreement encompassed tort as well as contract claim]; *Lerner v. Ward* (1993) 13 Cal.App.4th 155, 157 (*Lerner*) [contract providing for fee award "[i]n any action or proceeding arising out of this agreement" sufficiently broad to cover noncontract claims];

14

*Xuereb v. Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338, 1342 [attorney fees in "any lawsuit" to which the agreement "gives rise"], disapproved of on other grounds in *Santisas v. Goodwin* (1998) 17 Cal.4th 599, 614, fn. 8, as recognized in *Damian v. Tamondong* (1998) 65 Cal.App.4th 1115, 1127, fn. 13.) As the court succinctly put it in *Lerner*, agreeing with the argument that the phrase "arising out of" should be construed "broadly," the clause "was not limited to an action on the contract, but to any action or proceeding arising out of the agreement." (*Lerner*, *supra*, 13 Cal.App.4th at p. 160.)

Cases involving arbitration are similar, holding that "arising out of" is a broad phrase. For example, there is *EFund Capital Partners v. Pless* (2007) 150 Cal.App.4th 1311 (*Pless*), where an equity investor brought a partial shareholder derivative suit arising out of a strategic relationship agreement. (*Pless*, at pp. 1315–1316.) The lawsuit alleged claims for fraud, conspiracy to defraud, negligent misrepresentation, breach of fiduciary duty, interference, and conversion. (*Pless*, at p. 317.) Defendants moved to compel arbitration, which the trial court denied.

The Court of Appeal reversed, holding as follows: "The question then becomes whether plaintiff's fraudulent inducement and negligent misrepresentation claims brought on its own behalf against RAP Technologies's former officers, directors, and employee reasonably can be characterized as 'arising from or out of' the April 15, 2004 strategic relationship agreement. We further consider whether the causes of action brought on RAP Technologies's behalf, for fiduciary duty breach, interference with contractual relations, and conversion, can likewise be said to arise from or out of the April 15, 2004 strategic relationship agreement. The Courts of Appeal have construed arbitration clauses similar to the present provision to broadly encompass tort claims . . . ." (*Pless*, at pp 1322–1323.)

15

*Berman v. Dean Witter & Co., Inc.* (1975) 44 Cal.App.3d 999 was a suit by Jack Berman and his wife Leona who had accounts at defendant firm. Jack purchased for Leona's account five short-term future contracts for Japanese yen, and later the Bermans filed a complaint that alleged various torts in connection with that transaction. Defendants moved to compel arbitration, based on the provision in the customer agreement that "Any controversy between [Witter and Leona] arising out of or relating to this contract or the breach thereof, shall be settled by arbitration, . . . ." The trial court denied the motion. The Court of Appeal reversed, holding among other things that "The phrase 'any controversy . . . arising out of or relating to this contract . . . ' is certainly broad enough to embrace tort as well as contractual liabilities so long as they have their roots in the relationship between the parties which was created by the contract." (*Berman v. Dean Witter & Co., Inc., supra*, 44 Cal.App.3d at pp. 1002–1003; see also *Lewsadder v. Mitchum, Jones & Templeton, Inc.* (1973) 36 Cal.App.3d 255, 261.)

"Arising out of" is also involved in insurance coverage cases, including, for example, whether a claim "arises out of" ownership or use of a vehicle (*State Farm Mutual Auto Ins. Co. v. Partridge* (1973) 10 Cal.3d 94, 98) or the insured premises (*Kramer v. State Farm Fire & Casualty Co.* (1999) 76 Cal.App.4th 332, 340), or whether a contractor's liability policy covers liability "arising out of" the contractor's work for owner. (*Acceptance Ins. Co. v. Syufy Enterprises* (1999) 69 Cal.App.4th 321, 326 (*Syufy*).) And as Division Three of this court held in *Syufy*, citing numerous cases: "Furthermore, California courts have consistently given a broad interpretation to the terms 'arising out of' or 'arising from' in various kinds of insurance provisions. It is settled that this language does not import any particular standard of causation or theory of liability into an insurance

16

policy. Rather, it broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship." (*Syufy*, *supra*, 69 Cal.App.4th at p. 328; see also *Davis v. Farmers Ins. Group* (2005) 134 Cal.App.4th 100, 106 [term "arising out of" links factual situation with event creating liability and does not import any particular standard of causation or theory of liability into policy; term is of much broader significance than "caused by"].)

Amyris's brief introduces its argument with two assertions, the first of which is this: "it is improper to read a forum selection clause pertaining to a *contract* as encompassing criminal acts where the adjudication of such criminal acts has nothing to do with the interpretation of said contract. Amyris's CIPA claims do not 'arise out' of the parties' Agreement nor are they related in any way to the interpretation of the contract."

We have two observations: (1) the forum selection clause does not refer to an action that "pertain[s] to a contract," but one "arising" from it; and (2) the "interpretation of said contract" is not mentioned in the clause.

Amyris's argument fares no better than its assertion.

Amyris's argument here ignores the numerous cases discussing the "arising out of" language, a few of which we discussed above, cases holding that the clause: is "broad"; should be construed "broadly"; is "broad enough to embrace [claims] so long as they have their roots in the relationship"; and "broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship." Ignoring the numerous authorities that are apt, Amyris cites to only three cases: *Rice v. Downs*, *supra*, 248 Cal.App.4th 175 (*Rice*); *Jackson v.*

17

*Amazon.com, Inc.* (S.D. Cal. 2021) 559 F.Supp.3d 1132 (*Jackson*); and *Olinick*, *supra*, 138 Cal.App.4th 1286.[2]  None is helpful.

*Rice* involved a suit by Rice and others against attorney Downs for legal malpractice, breach of fiduciary duty, and breach of a written agreement to govern an LLC he had formed with Rice and others.  The trial court ordered Rice to arbitrate all his claims.  The Court of Appeal reversed in part, as to some of the claims, but not on any basis helpful to Amyris.

The opinion included an exhaustive discussion of the law, in the course of which it noted that " '[T]he decision as to whether a contractual arbitration clause covers a particular dispute rests substantially on whether the clause in question is "broad" or "narrow." ' (*Bono*[ *v. David* (2007)] 147 Cal.App.4th [1055,] 1067.)  'A "broad" clause includes those using language such as "*any claim* arising from or *related to* this agreement" ' (*ibid*.) or ' "arising in connection with" the agreement.' [Citation.]"  (*Rice*, *supra*, 248 Cal.App.4th at p. 186.)

After that, the Court of Appeal went on to note a consent-to-jurisdiction clause in the agreement that referred to " 'any action on a claim arising out of, under or in connection with this Agreement or the transactions contemplated by this Agreement.' "  (*Rice*, *supra*, 248 Cal.App.4th at p. 188.)  Interpreting the contract as a whole, the court applied the canon against surplusage to conclude that this linguistic difference must have significance, and thus concluded the arbitration provision was less expansive than the consent-to-jurisdiction clause.  In short, the *Rice* court's interpretation of the disputed arbitration clause was based on the specific language of the contract at issue, which is not in the RCL Agreement here.

---

[2] *Rice* is the only one of the three cases that was cited by Amyris in the trial court, cited in the footnote quoted above.

18

*Jackson*, the federal district court case, is likewise distinguishable. Plaintiff there brought a class action on behalf of delivery drivers, alleging that their employer Amazon "secretly monitor[ed] and wiretap[ed]" conversations between drivers and third parties. (*Jackson*, *supra*, 559 F. Supp.3d at p. 1135.) The district judge held that Amazon's eavesdropping did not arise from Amazon's employment contracts with its employees. Here, Lavvan is not accused of eavesdropping on communications between Amyris and third parties, but of recording conversations between Amyris and Lavvan in the course of the parties' business relationship under the RCL Agreement.

*Olinick*, the final case Amyris cites, is equally unavailing, not least because it enforced a forum selection clause. Olinick, a 59-year-old lawyer, sued his former employer asserting two causes of action: a statutory claim for age discrimination under FEHA and a common law tort claim for wrongful discharge in violation of public policy. The trial court stayed the action pursuant to a forum selection clause providing that "all disputes arising under this Agreement" would be heard in New York. (*Olinick*, at p. 1291.) The Court of Appeal affirmed, rejecting Olinick's argument that this language covered only contractual disputes and not his statutory quasi-tort FEHA claim. (*Id.* at pp. 1296–1297.) The court reasoned that the lack of any language limiting the forum selection clause's scope indicated that the parties intended to include "all causes of action arising from or related to the Agreement, regardless of how they are characterized." (*Id.* at pp. 1300–1301.)

We add, moreover, that Amyris's reliance on *Olinick* mischaracterizes its holding. Contrary to Amyris's assertion, *Olinick* did not hold that a quasi-tort claim may be subject to a forum selection clause only if the claim is

19

"inextricably intertwined with the construction and enforcement of the Agreement," as Amyris put it in its brief. It is not accurate that the *Olinick* court was "examining whether the *forum selection* clause was applicable" when it referenced "inextricably intertwined" issues. Rather, the reference to "inextricably intertwined" arose in the court's discussion of whether the contract's choice-of-law clause applied. (*Olinick*, *supra*, 138 Cal.App.4th p. 1300.)

Were all that not enough, we note that Amyris has cited to no other case using the "inextricably intertwined" language.[3]

Amyris's complaint here alleges that Lavvan, its CEO Closner, and Does recorded conversations with Amyris executives during Amyris and Lavvan's business relationship. It further alleges that all parties involved were acting within the scope of their respective employment at the time of the recordings. In short, the complaint nowhere alleges, or even suggests, that Lavvan recorded any conversations outside the scope of their contractual relationship, thus making clear that the recorded conversations arose from the RCL Agreement. As Amyris itself describes it, "the business relationship between the parties may have been the reason that Amyris employees were speaking with Lavvan employees." Indeed it was, and the alleged recordings necessarily "arose out" of the RCL Agreement.

---

[3] Shortly before oral argument, Amyris cited to us the recent case of *Jackson v. Amazon.com, Inc.* (9th Cir. 2023) 65 F.4th 1093, a two to one decision from the Ninth Circuit. Passing over that such case is not binding on us, and involves arbitration, not forum selection, the case arises out of a factual setting where Amazon was secretly monitoring conversations among its Flex drivers made during times they were not working. Applying Ninth Circuit law, the majority held that this did not "arise out of" their employment, and affirmed the district court's denial of the motion to compel arbitration. That is not the setting here.

20

**Amyris Has Not Demonstrated That Enforcement of the Forum Selection Clause Would be Unreasonable**

Amyris's second argument is that "Enforcement of the Forum Selection Clause Here Would Foreclose Any Justice for Amyris, Contravening the State's Important Public Policy in CIPA's 'Vigorous Application,' " which argument has three sub-arguments, the first of which is that enforcement of CIPA is an important state policy. Citing to *Intershop*, *supra*, 104 Cal.App.4th 191, Amyris first asserts that "a forum selection clause will not be enforced if to do so would bring about a result contrary to the public policy of this state" (*id.* at p. 200), and then argues: "In examining whether enforcement is reasonable, courts will look to whether enforcement will contravene public policy as well as whether the selected forum can provide 'an adequate remedy' for the legal violations alleged. Continued enforcement of CIPA is unequivocally an important policy of this State; and without a CIPA analogue, New York will offer no justice at all, let alone 'substantial justice' for the wrong committed by Lavvan. That straightforward analysis leads to the inescapable conclusion that enforcement of the forum selection clause in this case would be unreasonable."

There is no analysis, "straightforward" or otherwise, as to whether New York law would apply. And the briefing here does not even address the issue.

The choice of law provision in the RCL Agreement provides as follows: "This Agreement shall be construed in accordance with, and governed by, the laws of the State of New York, without regard to the conflicts of law provisions thereof. . . ."

Concerning choice of law, in its opposition papers below Amyris had this three-line footnote: "While Amyris notes the importance of considering the existence of the choice of law provision in connection with determining

21

the enforceability of the forum selection clause, it reserves all rights concerning the provision's applicability."

In its opening brief here, Amyris says only this: "Defendants have not offered any indication that they would decline to enforce the choice of law provision, such that California law could apply. In its opposition to the motion to dismiss below, Amyris raised the choice-of-law provision, noting the propriety of its consideration in the analysis. [Citation.] In reply, Lavvan and Mr. Closner offered no response to the assumption that they would seek to have the choice-of-law provision, and consequently New York law, applied as well. [Citation.] Application of New York law would foreclose any CIPA cause of action."

In its respondent's brief, Lavvan addresses the issue in a footnote, and asserts that we need not resolve the subject of choice of law, going on to assert, without any analysis, that if we deem it relevant, "the choice of law clause requires the application of New York law."

And in its reply brief, Amyris has a footnote that asserts in part that "As discussed in greater detail below, Lavvan for the first time on appeal asserts its intent to seek to *apply* the New York choice-of-law provision in the Agreement to this dispute. . . . Now that Lavvan has squarely articulated its intent to apply the New York choice-of-law provision and raised the issue of its *applicability* in support of the trial court's decision below, this Court may also reach on this issue. [Citation.]"

And Amyris's discussion "in greater detail below" says this: "Lavvan now confirms its intent to seek to apply the New York choice-of-law provision. [Citation.] This admission leaves no doubt that the choice-of-law provision here *must* be considered in connection with the forum selection clause. While Lavvan claims the Court need not reach the issue, in the same breath, it

22

briefs the issue just in case 'this Court deems it relevant.' [Citation.] And, it is not just relevant, it is essential, as Amyris has explained throughout this litigation."

Maybe so. But nowhere do the parties brief whether in fact New York law would apply, which is especially problematic for Amyris, which has the burden here. There is Amyris's assumption that Lavvan would say—or does say—it would. And Lavvan's footnote saying it should. This is not sufficient, especially in light of the cases, many of which discuss the applicability of the law of the foreign forum, as, for example, we did in *Am. Online*, discussing the law of Virginia. (*Am. Online*, *supra*, 90 Cal.App.4th at p. 5–6.)

But in addition to that failing, there is the express language of the choice of law provision here which, as quoted, is that "This Agreement shall be construed in accordance with, and governed by, the laws of New York." A reader does not easily—or quickly—read "agreement shall be construed" to encompass Amyris's claims here, the alleged illegality of recording conversations. In sum and in short, Amyris has not demonstrated that New York law would apply.

Amyris's argument would fail for other reasons.

Amyris's first sub-argument asserting California policy quotes from *Kearney v. Salomon Smith Barney, Inc.*, *supra*, 39 Cal.4th 95, 125 mentioning California's "strong and continuing interest in the full and vigorous application of the provisions of [CIPA] prohibiting the recording of telephone conversations without the knowledge or consent of *all* parties to the conversation." And Amyris's policy discussion continues for several pages with boilerplate from a few cases, none of which deals with a forum selection

clause.[4]  But Amyris's argument begs the question, especially because it just assumes, without demonstration, that New York law would apply.

It begs the question for the additional reason that Amyris has not met its burden of establishing that Lavvan's alleged conduct fits within CIPA's policy.  Amyris has not submitted the recordings giving rise to its claim, or any proof at all.  Lavvan, by contrast, argued that Lavvan's alleged conduct is not implicated by the policy of CIPA, which expressly *exempts* recordings made for the purpose of obtaining evidence reasonably believed to relate to the commission of enumerated unlawful acts, including extortion.  (Pen. Code, § 633.5.)

Amyris's argument continues that enforcement of the forum selection clause is unreasonable, because New York cannot provide it with "substantial justice," going on to assert that "New York has no CIPA analogue."

To begin with, such an argument ignores the holdings in California cases, such as *Stangvik v. Shiley, supra*, 54 Cal.3d at p. 754, that "the fact that California law would likely provide plaintiffs with certain advantages of procedural or substantive law cannot be considered as a factor in plaintiffs' favor in the forum non conveniens balance."  Or, as the court put it in *Investors Equity Life Holding Co. v. Schmidt, supra*, 195 Cal.App.4th at p. 1530, " 'That the law is less favorable to the plaintiffs in the alternative forum, or that recovery would be more difficult if not impossible, is irrelevant to the determination whether the forum is suitable unless "the alternative

---

[4] *Kearney v. Salomon Smith Barney, supra*, 39 Cal.4th at p. 102 involved a brokerage house's systematic taping of client conversations that concerned the clients' personal financial affairs.  And both *Ribas v. Clark* (1985) 38 Cal.3d 355, 358, and *Flanagan v. Flanagan* (2002) 27 Cal.4th 766, 770–771, involved eavesdropping.

24

forum provides no remedy at all." ' " And a forum provides "no remedy at all" only in " 'rare circumstances,' such as where the alternative forum is a foreign country whose courts are ruled by a dictatorship, so that there is no independent judiciary or due process law.' " (*Ibid.*; see also *Boaz v. Boyle & Co.* (1995) 40 Cal.App.4th 700, 710–711 [holding that "a showing that recovery would be more difficult or even impossible in a foreign forum does not demonstrate that the alternative forum is inadequate"], citing *Stangvik*, at pp. 129–130, 132–134, and fn. 4 at p. 134, 135; *Khan v. Shiley, Inc.* (1990) 217 Cal.App.3d 848.)

Notably, Amyris does not cite a single case declining to enforce a forum selection clause on substantial justice or adequate remedy grounds. Indeed, the four cases Amyris does cite—*Ryze, supra*, 33 Cal.App.5th at p. 1072; *Olinick, supra*, 138 Cal.App.4th at p. 1305; *Intershop, supra*, 104 Cal.App.4th at p. 202; and *CQL, supra*, 39 Cal.App.4th at p. 1357—all enforced the forum selection clause at issue.

Amyris's argument ends with a heading "The Absence of an Anti-waiver Provision in CIPA Does Not Compel a Different Result," which begins as follows: "The trial court, ignoring this well-settled analytical framework and the obvious result it compels in this case, made up its own dispositive question—whether CIPA contains an anti-waiver provision. But numerous cases confirm that while the existence of an anti-waiver provision is *a consideration* in the enforceability analysis, it is far from dispositive. . . . [¶] And, where there *is* an anti-waiver provision, the consequence is merely to shift the usual burden from the plaintiff to show that the selected forum will not provide substantial justice to the defendant to show that the contractually agreed upon forum ' "will not diminish in any way the substantive rights afforded . . . under California law." [Citation.]'

25

(*Verdugo v. Alliantgroup, L.P.* (2015) 237 Cal.App.4th 141, 147, rehg. den. June 25, 2015; see *Drulias v. 1st Century Bancshares, Inc.* (2018) 30 Cal.App.5th 696, 703 [noting burden-shifting consequence of an anti-waiver provision].)"

We do not read the trial court's order as determining the lack of an anti-waiver provision "dispositive." But the fact that CIPA does not include an anti-waiver provision is significant. As the cases involving statutes with anti-waiver provisions show, the legislature knows how to specify when it wants to create statutory rights that parties cannot bargain away. Thus, for example, *Olinick*: "Had the Legislature intended to prohibit employers and employees from entering into agreements containing choice of law and forum selection clauses in lieu of the protections conferred by the FEHA, it would have so provided, because it plainly knows how to do so." (*Olinick, supra,* 138 Cal.App.4th at p. 1304.) That same reasoning applies to CIPA.

In cases where the statute at issue lacks an anti-waiver provision courts have upheld freely negotiated forum selection clauses. (See *CQL, supra,* 39 Cal.App.4th at p. 1357 ["Here, given the absence of any statute prohibiting the parties from choosing Ontario as a forum and therefore waiving California law, there exist 'no compelling policy reasons for denying enforcement of the forum selection clause' "]; *Olinick, supra,* 138 Cal.App.4th at p. 1304 [finding that the lack of an anti-waiver provision in the statute at issue favored enforcement of the forum selection and choice of law clauses].)

## DISPOSITION

The order is affirmed. Lavvan shall recover its costs on appeal.

_____
Richman, J.

We concur:

_____
Stewart, P.J.

_____
Miller, J.

*Amyris, Inc. v. Lavvan, Inc.* (A165829)

27