Filed 11/24/25  Debreu v. The TCW Group CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| STANISLAS DEBREU et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>THE TCW GROUP, INC., et al.,<br><br>Defendants and Respondents. | B324314<br><br>(Los Angeles County<br>Super. Ct. No. 21STCV13868) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Kevin Clement Brazile, Judge.  Reversed with directions.

Jenkins Kayayan, Jonathan M. Jenkins and Lara Kayayan for Plaintiffs and Appellants.

Sheppard Mullin Richter & Hampton, David A. Schwartz, Andrea Feathers, Barbara E. Taylor and David M. Berger for Defendants and Respondents The TCW Group, Inc., TCW Owners LLC, Clipper Holding, L.P., Clipper G.P. LLC, The

Carlyle Group L.P., Carlyle Partners V1 L.P., Carlyle Financial Services Harbor, L.P.; Carlyle Partners V-A, L.P.; CP V Coinvestment A, L.P., CP V Coinvestment B, L.P., Carlyle-Clipper Coinvestment, L.P., David Lippmann, Laird Landmann, Tad Rivelle, Meredith Jackson, Nippon Life Insurance Company and NLI US Investments, Inc.

Kendall Brill & Kelly, Richard B. Kendall, Patrick J. Somers and Matthew P. Bernstein for Defendant and Respondent Jess R. Ravich.

_____

## INTRODUCTION

In this dispute over whether defendants breached a management securityholders agreement, the parties disagree regarding which state's law should apply on demurrer. Plaintiff Stanislaus Debreu initially filed a complaint in federal district court and that court enforced a Delaware forum selection clause contained in a different agreement and dismissed the complaint on forum non conveniens grounds. Debreu subsequently filed a complaint in state court. In their demurrers, the TCW Group of Defendants[1] argued Delaware law applies to Debreu's complaint and each cause of action is barred by that state's statute of limitations. Defendant Jess R. Ravich argued that either Delaware or New York law applies and that, regardless of which state law applies, no actionable cause of action has been alleged against him. Debreu argued New York law applies to his

---

[1] The TCW Group of Defendants includes all defendants, except for Jess Ravich.

2

contract causes of action and California law applies to his tort causes of action.[2]

The trial court sustained, without leave to amend, the demurrers on statute of limitations grounds.  In doing so, it relied on the federal district court's order enforcing the Delaware *forum selection clause* to determine that a Delaware *choice of law provision* applied to Debreu's complaint.  The trial court applied Delaware law and determined Debreu's complaint was untimely.

We conclude the trial court erred by applying Delaware law.  Accordingly, we reverse and direct the trial court to consider whether New York or California law, or a combination of the two, applies and whether each cause of action is sufficiently pleaded.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Factual Allegations*

TCW Group, Inc. (TCW) was an asset management firm headquartered in Los Angeles.[3]  Stanislas Debreu was employed there as "a management-level employee . . . from approximately 2010 to 2019."  Debreu's original compensation package included shares of Series A common stock in TCW.

---

[2]    As explained further below, Debreu now contends California law applies to all his claims.

[3]    The factual allegations are taken from the operative second amended complaint, which we assume are true for purposes of our review.  (See *City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865 ["we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law"].)

In 2012, the "2013 Carlyle Investors" purchased a majority interest in TCW.[4]  The following year, Debreu agreed to exchange his Series A common stock in TCW for Class A-2 equity securities, or ownership "units," in Original Clipper L.P., an "entity formed to take ownership . . . of TCW."  Debreu also invested $1 million of his own money to obtain additional shares in Original Clipper L.P. which would qualify him under the Management Securityholders Agreement dated February 6, 2013 (2013 MSA) "as a Significant Management Holder, entitling him to Tag Along Rights with advance written notice."[5]  Under the terms of the 2013 MSA, Tag Along Rights meant that Debreu would be provided 20 business days' written notice if the 2013 Carlyle Investors were going to sell their shares and would allow Debreu "the right to sell his . . . interests in Original Clipper L.P., on a pro rata basis, at the same price and on the same terms as a third party's purchase of the interests owned by the 2013 Carlyle Investors."

Of particular significance to this appeal, the 2013 MSA specified that "the legal relations between the parties and the adjudication and the enforcement thereof, shall be governed by and interpreted and construed in accordance with the laws of the State of New York."

---

[4]     The 2013 Carlyle Investors include Carlyle Partners V, L.P., Carlyle Financial Services Harbor, L.P., Carlyle Partners V-A L.P., CP V Coinvestment A, L.P., CP V Coinvestment B, L.P., and Carlyle-Clipper Coinvestment, L.P.

[5]     The Debreu Family Living Trust dated April 3, 2013, became the beneficial and record holder of Debreu's limited partnership interests in Original Clipper L.P.  Plaintiff Elizabeth Byrne Debreu is a cotrustee of the Trust.

4

On November 9, 2017, Original Clipper L.P. sent out a 14-page memorandum to all the employee owners, including Debreu, announcing an internal restructuring of the company "that would result in Plaintiffs no longer being limited partners in Original Clipper LP but instead 'new members' in TCW Owners, LLC." The memorandum explained that "Plaintiffs' and other Employee Owners Tag Along Rights . . . would be placed under the control of TCW Owners LLC," which was governed by a three-person Board of Managers controlled by defendants David Lippman, Laird Landmann and Ravich.

The memorandum further stated that Original Clipper L.P. would exercise its authority under the 2013 limited partnership agreement to restructure the company and merge with a "new limited partnership."[6] Although the memorandum stated that "the Employee Owners' consent was not required" to effectuate the restructuring, Debreu alleged that "defendants knew the Purported Restructuring did, in fact, require the Employee Owners' consent pursuant to the 2013 MSA [and] therefore asked each Employee Owner to return to management a signed copy . . . 'evidencing your support and approval for the restructuring.'" Debreu declined to sign.

---

[6] The 2013 limited partnership agreement has a merger provision which states: "The Partnership may, with approval of, and on such terms as decided by, the General Partner and without the need for any further act, vote or approval of any Partner or any other Person, convert into, merge with, or consolidate into, another limited partnership . . . , a corporation . . . or other business entity, regardless of whether the Partnership is the survivor of such conversion, merger or consolidation." This agreement contains a Delaware choice of law provision.

On December 1, 2017, the 2013 Carlyle Investors formally announced the merger, effective December 13, 2017, of Original Clipper L.P. and TCW Administrative, an alleged shell company that held the ownership interest of the units owned by the 2013 Carlyle Investors. The merger resulted in the creation of a new limited partnership, Clipper Holdings, L.P., and a new Amended and Restated Limited Liability Company Agreement, dated December 1, 2017 (2017 LLC Agreement). This 2017 LLC Agreement contained a Delaware choice of law provision and a forum selection clause requiring any dispute be tried in Delaware.[7] The 2013 Carlyle Investors also announced they agreed to sell a 24.75 percent interest in Original Clipper to Nippon Life Insurance Company and NLI US Investments, Inc., a subsidiary of Nippon Life Insurance. The remaining 31.18 percent of the shares owned by the 2013 Carlyle Investors were purchased by Carlyle Global. Debreu did not receive 20 days' advance written notice of either sale.

---

[7] The 2017 LLC Agreement states: "(a) THIS AGREEMENT IS GOVERNED BY AND SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAW OF THE STATE OF DELAWARE, EXCLUDING ANY CONFLICT-OF-LAWS RULE OR PRINCIPLE THAT MIGHT REFER THE GOVERNANCE OR THE CONSTRUCTION OF THIS AGREEMENT TO THE LAW OF ANOTHER JURISDICTION. . . . [¶] (b) Each Member irrevocably submits to the exclusive jurisdiction of the Chancery Court of the State of Delaware located in Wilmington, Delaware (or, if the Chancery Court of the State of Delaware declines to accept jurisdiction over a particular matter, the United States District Court for the District of Delaware) and appellate courts thereof, for the purposes of any suit, action or other proceeding arising out of, related to or in connection with this Agreement."

Debreu alleges that the merger "was a sham" designed to "boot the Employee Owners from Original Clipper LP" and strip them of the Tag Along Rights so that the 2013 Carlyle Investors would receive "more than $1.1 billion" from the sale. Debreu further alleges "the sale of 100% of the 2013 Carlyle Investors' holdings by blocking the Tag Along Rights unlocked $138 million in [stock appreciation rights] for TCW senior management, of which three defendants (Lippman, Landmann, and [Tad] Rivelle) are believed to have shared $120 million." Debreu claims that Nippon Life Insurance and NLI US Investments went along with this plan because they were concerned that employees would leave the company after exercising their Tag Along Rights.

The complaint further alleges that, "in an effort to placate Mr. Debreu and the other Significant Management Holders, [Defendants] represented that there would be some form of future liquidity event that would enable recovery of some portion of the losses sustained from the taking away of Tag Along Rights." In February 2018, defendants gave Debreu a "take it or leave it" offer, allowing him to sell his units for "85% of the value that the 2013 Carlyle Investors had received . . . resulting in a net loss of approximately $1.56 million. Moreover, participation forced Plaintiffs to forego their share of a $90 million dividend announced just two days after the forced liquidity event was completed. In addition, Defendants refused to allow Plaintiffs to liquidate additional partnership interests worth approximately $900,000."

Debreu resigned from the company on May 3, 2019. Shortly thereafter, "TCW Owners LLC then sent Mr. Debreu a letter stating that . . . it would exercise its option to purchase Plaintiffs' remaining, unliquidated interests at a value of

$645,930.56—a 28.4% discount." Debreu refused to redeem the purchase note, which required him to agree to the 2017 LLC Agreement in exchange for payment.

B.    *The Federal Court Dismisses Debreu's Complaint Pursuant to the Delaware Forum Selection Clause in the 2017 LLC Agreement*

On November 8, 2019, Debreu filed a complaint in the United States District Court for the Central District of California. The federal complaint, which alleged 10 causes of action, alleged that Debreu was seeking "redress for a fraudulent scheme undertaken to strip Plaintiffs of a vested legal right . . . to sell to a third party their minority interests in a limited partnership at the same price and on the same terms as the majority's sale." Claiming that the "Purported Merger was nothing more than a restructuring in disguise," Debreu alleged the scheme was designed to eliminate his contractual Tag Along Rights and that "Debreu was unable to sell his Original Clipper LP interests at the price enjoyed by the 2013 Carlyle Investors, resulting in a direct loss to him of approximately $2.5 million."

On February 7, 2020, defendants filed a motion to dismiss for forum non conveniens pursuant to the forum selection clause in the 2017 LLC Agreement. The motion argued the 2013 MSA, which contained a permissive New York forum selection clause,[8]

---

[8]    "A forum selection clause is either mandatory or permissive. A clause is mandatory if it requires the parties to litigate their disputes exclusively in the designated forum, and it is permissive if it merely requires the parties to submit to jurisdiction in the designated forum." (*Verdugo v. Alliantgroup, L.P.* (2015) 237 Cal.App.4th 141, 147, fn. 2; see *Berg v. MTC*

8

was irrelevant because Debreu was a party "to the Amended and Restated Limited Liability Company Agreement of TCW Owners LLC dated December 1, 2017 [i.e., the 2017 LLC Agreement] . . . , which contains a forum selection clause exclusively designating the Delaware Court of Chancery as the venue for any case arising from or related to the Owners Agreement."

On April 15, 2020, the federal district court dismissed the case without prejudice to "refiling the case in the Chancery Court of the State of Delaware." In making this ruling, the court noted that mandatory forum selection clauses "are presumptively valid" and that "[t]he party challenging the presumption of validity 'bears a "heavy burden of proof" and must 'clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.'"'"

The district court determined Debreu failed to meet his burden because Delaware law states that a "member or manager of a limited liability company . . . is bound by the limited liability company agreement *whether or not the member or manager or assignee executes the limited liability agreement*."[9] The court rejected Debreu's argument that the forum selection clause was a

*Electronics Technologies Co.* (1998) 61 Cal.App.4th 349, 359 ["Clauses that grant jurisdiction to a particular forum without expressly making that forum the mandatory situs for resolution of disputes are considered permissive only."].)

[9] 6 Delaware Code section 18-101, subdivision (9), states in relevant part, "A member or manager of a limited liability company or an assignee of a limited liability company interest is bound by the limited liability company agreement whether or not the member or manager or assignee executes the limited liability company agreement."

9

product of fraud because there were "no facts that suggest the TCW Defendants acted improperly when including the forum selection clause in the Agreement," that Debreu "signed the document containing the forum selection clause," and that the "mere expense or inconvenience" of litigating in Delaware is insufficient to overcome the presumption.

The district court denied Debreu's motion for reconsideration.[10]  Debreu appealed to the United States Court of Appeals for the Ninth Circuit, but he voluntarily dismissed his appeal on February 25, 2021.

C.    *The Trial Court Applies Delaware Law Based on the Federal District Court's Order Enforcing the Delaware Forum Selection Clause*

On April 12, 2021, Debreu filed a new complaint in California state court.  The complaint, which alleged a breach of the 2013 MSA, alleged causes of action for constructive fraud, conversion, conspiracy to commit conversion, unjust enrichment, breach of written contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief.[11]  Unlike the federal complaint, however, Debreu alleged that tolling applied because "[d]efendants' misconduct . . . constitutes a continuing violation,"

---

[10]    The federal court acknowledged that it mistakenly indicated in its original ruling that Debreu signed the agreement containing the forum selection clause but stated that it "was not material to the Court's ultimate holding" since "[t]he Court applied Delaware law because the Original Agreement, to which Plaintiff consented, provides that Delaware law governs."

[11]    A cause of action for intentional interference with contractual relations was subsequently dismissed.

10

and, separately, that "[i]n response to the COVID-19 pandemic . . . Emergency Rule 9 . . . tolled civil statute of limitations for the period April 6, 2020 through October 1, 2020" and, finally, that "[a]nother action . . . previously existed between certain of the parties, which was dismissed without prejudice." The state complaint also added the Nippon entities as party defendants and demanded a jury trial.

Three groups of defendants filed three separate demurrers to the complaint and a motion for forum non conveniens. The trial court denied the motion for forum non conveniens on the basis that the predispute jury waiver was unenforceable,[12] but sustained the demurrers with leave to amend. In its ruling, the trial court concluded that because the federal district court determined that Delaware's forum selection clause was "valid and enforceable . . . it does not stand to reason that the accompanying *choice of law provision* . . . is not enforceable. Therefore, . . . it is impermissible for Plaintiffs to now argue that it is void or that their claims do not stem from the Owners Agreement." (Italics added.) The trial court further ruled that Delaware's three-year statute of limitations applies, and that tolling had not been sufficiently alleged under applicable Delaware law. The trial court granted leave to amend only to the extent plaintiffs could allege "further facts to support their equitable tolling theory" under the Delaware Savings Clause.[13]

---

[12]     The ruling on the motion for forum non conveniens is not at issue in this appeal.

[13]     10 Delaware Code section 8118, subdivision (a), states: "If in any action duly commenced within the time limited therefor in this chapter, . . . the action otherwise avoided or defeated by the

D. *The Trial Court Sustains the Demurrers to the First Amended Complaint*

On February 17, 2022, Debreu filed a First Amended Complaint, adding eight paragraphs on equitable tolling. Those paragraphs alleged that "[t]o the extent Delaware law applies," the complaint was timely filed under the Delaware Saving Statute "to which a plaintiff whose case has been dismissed for any reason other than on the merits has one year within which to re-file the action," and "equitable tolling, under which Delaware law tolls entirely the running of the statute of limitations for the exact number of days any previous action regarding the same subject matter was pending." Thus, according to the allegations in the First Amended Complaint, Debreu's action was timely filed because "Plaintiffs dismissed the appeal of the Federal Action in the Ninth Circuit in February 2021 and, within 37 days, re-filed the pending action, well within the one-year deadline set by the Delaware Savings Statute" or, alternatively, "the limitations period is extended for an additional 835 days, i.e., the length of time the Federal Action was pending."

Defendants again filed three separate demurrers. On April 8, 2022, the trial court sustained the demurrers with leave to amend. The trial court concluded that, "even assuming Plaintiffs filed the Federal Action in good faith, the statute of limitations for Plaintiffs' claims did not expire until eight months after the motion for forum non conveniens was granted. After seeing that ruling, Plaintiffs could have filed a lawsuit . . . to

___

death of any party thereto, or for any matter of form; . . . a new action may be commenced, for the same cause of action, at any time within 1 year after the abatement or other determination of the original action, or after the reversal of the judgment therein."

12

ensure the statute of limitations did not expire. Instead, Plaintiffs allowed the limitations period to run while pursuing an appeal, which they dismissed voluntarily. . . . [T]hey should not be able to avail themselves of 10 Del. Code § 8118. [¶] For the same reasons, equitable tolling should not apply . . . because the Federal Action was not 'mistakenly' pursued until the statute of limitations expired."

E.  *The Trial Court Sustains the Demurrers to the Second Amended Complaint Without Leave to Amend*

Debreu filed the operative Second Amended Complaint (SAC) on April 28, 2022. Debreu expanded on his tolling allegations by alleging the filing in federal court was based on the "good faith" belief that venue was proper and, following dismissal of that action, that "Plaintiffs also believed, in good faith, that California limitations period (including, but not limited to, California's Covid-19 tolling rules, which extended each applicable statute of limitations by almost six months) would apply in a California forum."

Again, three separate demurrers were filed. This time, however, the trial court sustained the demurrers without leave to amend. Concluding that "Plaintiffs chose to file the Federal Action for strategic reasons," the court determined that neither the Delaware Savings Clause nor equitable tolling applied because "Plaintiffs caused their own predicament." The trial court also noted that the Nippon defendants were not parties to the Federal Action, "so there is no possibility of equitable tolling or the Savings Statute applying to the claims against them."

13

Judgment was entered in favor of the defendants.  Debreu timely appealed.

## DISCUSSION

A.  *Standard of Review*

"""On appeal from an order of dismissal after an order sustaining a demurrer, our standard of review is de novo, i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law."' [Citation.]  In reviewing the complaint, "we must assume the truth of all facts properly pleaded by the plaintiffs, as well as those that are judicially noticeable." [Citation.]  We may affirm on any basis stated in the demurrer, regardless of the ground on which the trial court based its ruling.'" (*Ward v. Tilly's, Inc.* (2019) 31 Cal.App.5th 1167, 1174; see *T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.)

"When a trial court sustains a demurrer without leave to amend, 'we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. . . .  If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. . . .  The plaintiff has the burden of proving that an amendment would cure the defect.'" (*Modisette v. Apple Inc.* (2018) 30 Cal.App.5th 136, 155; see *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

B.  *Choice of Law*

"The parties to a contract may specify the law to be followed in matters concerning the contract." (*Mencor*

14

*Enterprises, Inc. v. Hets Equities Corp.* (1987) 190 Cal.App.3d 432, 435.) "The party seeking to enforce the choice-of-law provision bears the [initial] burden to establish a sufficient relationship to the state whose law the parties chose." (*Colaco v. Cavotec SA* (2018) 25 Cal.App.5th 1172, 1188 (*Colaco*).) If that burden is met, California courts will enforce that choice of law provision unless either: "'(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or [¶] (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties.'" (*Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459, 465 (*Nedlloyd*); accord, *Pitzer College v. Indian Harbor Ins. Co.* (2019) 8 Cal.5th 93, 100-101; *Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 917 (*Washington Mutual*).)

1. *The Second Amended Complaint Alleges Sufficient Facts that Debreu Did Not Consent to the Delaware Choice of Law Provision*

We requested supplemental briefing on whether California law should apply when considering if the SAC states a valid cause of action, and if so, whether the demurrer should have been sustained without leave to amend. Defendants argue we should not apply California law, and the trial court's demurrer ruling can be affirmed because Debreu consented to the Delaware choice of law provision in the 2017 LLC Agreement. (See *Woods v. Fox Broadcasting Sub., Inc.* (2005) 129 Cal.App.4th 344, 357 ["[w]e

15

can reach a ground for demurrer that was not raised below if it presents a pure question of law"].)  Debreu argues he did not consent to the choice of law provision.  Because on review of the demurrer ruling, we must accept the facts alleged in the SAC as true, Debreu has the better argument.

"'A choice-of-law provision, like any other contractual provision, will not be given effect if the consent of one of the parties to its inclusion in the contract was obtained by improper means, such as by misrepresentation, duress, or undue influence, or by mistake.  Whether such consent was in fact obtained by improper means or by mistake will be determined by the forum in accordance with its own legal principles. . . .  Choice-of-law provisions contained in [adhesion] contracts are usually respected.  Nevertheless, the forum will scrutinize such contracts with care and will refuse to apply any choice-of-law provision they may contain if to do so would result in substantial injustice to the adherent.'"'"  (*Samaniego v. Empire Today, LLC* (2012) 205 Cal.App.4th 1138, 1148, citing *Washington Mutual, supra,* 24 Cal.4th at p. 918, fn. 6.)

According to defendants, Debreu gave his consent in a two-step process.  First, defendants argue Debreu became a limited partner of Original Clipper L.P., which under the 2013 limited partnership agreement allowed the partnership, "without the need for any further act, vote or approval," to "convert into, merge with, or consolidate into, another limited partnership . . . , a corporation . . . or other business entity."[14]  Second, once the

---

[14]    As stated, the 2013 limited partnership agreement also contains a Delaware choice of law provision.  The parties did not argue in the trial court or in their appellate briefing that this

16

partnership agreed to merge with TCW Administrative, L.P., Debreu became a member of TCW Owners and was bound by the Delaware choice of law provision set forth in the 2017 LLC Agreement.

But Debreu alleged in the SAC that the merger was a sham designed to eliminate his Tag Along Rights, that the 2013 MSA remains intact, and "that the Purported Restructuring and the Purported Merger are voidable or void" and unauthorized by the 2013 limited partnership agreement.[15]  On demurrer, we are required to accept these allegations as true.  As to Debreu's purported consent, the SAC alleges: "Defendants knew the Purported Restructuring did, in fact, require the Employee Owners' consent pursuant to the 2013 MSA, the Nov. 9 Memo therefore asked each Employee Owner to return to management a signed copy of the Nov. 9 Memo 'evidencing your support and approval for the restructuring.'  This request was part of Defendants' scheme to fraudulently induce the Employee Owners into acquiescing to the 'restructuring' without calling it 'consent.'  Mr. Debreu refused to sign and return the Nov. 9 Memo."

---

agreement's choice of law provision should govern their dispute. To the extent the TCW Defendants raised the argument in their "counter-summary of relevant facts" on appeal or in the factual recitation of their memoranda of points and authorities in support of the demurrers filed in the trial court, we are bound by the allegations in the SAC.

[15]     Debreu alleges that "[t]he 2013 [limited partnership agreement] authorized Clipper GP to enter into a *merger* without limited partner consent but not a *restructuring*. . . .  No *bona fide* merger ever took place and Owners LLC filed an exemption request with the SEC describing itself as the byproduct of an 'internal restructuring,' not a merger."

17

Additionally, the operative complaint alleged "Mr. Debreu repeatedly objected to the transactions depicted in the Nov. 9 Memo as they pertained to his rights under the 2013 MSA. Mr. Debreu objected orally and in writing, informing TCW, Original Clipper LP, and the Individual Defendants that his Tag Along Rights and other rights under the 2013 Governing Agreements could not, pursuant to those same agreements, be taken away unilaterally and without the Employee Owners' express consent."

Only where "the relevant facts are undisputed, [does] enforcement of a choice-of-law provision present[] a question of law." (*Colaco v. Cavotec SA* (2018) 25 Cal.App.5th 1172, 1189 (*Colaco*).) Here, the facts alleged in the SAC indicate Debreu did not consent to the 2017 LLC Agreement and that this agreement—including the Delaware choice of law provision—is not enforceable due to fraud. Because we must accept Debreu's allegations as true, we cannot conclude at this stage of the proceeding that Debreu consented to the Delaware choice of law provision. (See *Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 113-114 ["'On a demurrer a court's function is limited to testing the legal sufficiency of the complaint. [Citation.] "A demurrer is simply not the appropriate procedure for determining the truth of disputed facts." [Citation.] The hearing on demurrer may not be turned into a contested evidentiary hearing through the guise of having the court take judicial notice of documents whose truthfulness or proper interpretation are disputable'"]; *Friends of Glendora v. City of Glendora* (2010) 182 Cal.App.4th 573, 576 [on demurrer, "we do not concern ourselves with the plaintiff's ability to prove its factual allegations"].)

18

Having determined we must accept Debreu's allegations he did not consent to the Delaware choice of law provision in the 2017 LLC Agreement, we next examine the remaining bases for applying Delaware law.

2. *The Federal Court's Forum Non Conveniens Ruling Did Not Preclude Debreu From Challenging the Delaware Choice of Law Provision*

The trial court determined it was "impermissible" for Debreu to challenge the Delaware choice of law provision because the federal district court concluded the Delaware forum selection clause in the 2017 LLC Agreement was "valid and enforceable." Debreu challenges this ruling and contends the trial court improperly applied collateral estoppel principles "[g]iven the unique procedural burdens and presumptions applicable to federal forum non conveniens motions." The TCW Group of Defendants[16] concede collateral estoppel does not apply but argue the trial court's reference to the federal action was proper "because that court's reasoning was fully applicable to explain why Debreu, by operation of law, consented to be bound by the [2017] Agreement." We agree with Debreu the trial court erred in concluding Debreu could not challenge the application of Delaware law based on the ruling of the district court.

---

[16] Ravich states that "[i]nstead of burdening the court with a duplicative analysis of the reasons why the trial court's statute-of-limitations rulings should be affirmed," he joins the argument raised by the other defendants.

The doctrine of collateral estoppel "prevents 'relitigation of previously decided issues,' rather than causes of action as a whole. . . . It applies only '(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party.'" (*Samara v. Matar* (2018) 5 Cal.5th 322, 326-327; accord, *Williams v. Doctors Medical Center of Modesto, Inc.* (2024) 100 Cal.App.5th 1117, 1131-1132 [setting forth elements of issue preclusion].)

In their demurrer, the Carlyle defendants[17] argued "Debreu is estopped from contesting in this action that Delaware law still applies." The trial court agreed Debreu could not challenge the application of Delaware law "because of the District Court's finding" and cited *Hawkins v. SunTrust Bank* (2016) 246 Cal.App.4th 1387 in support of its conclusion. *Hawkins* involved whether the trial court improperly took judicial notice of a sister-state judgment, and it held that "[t]he trial court did not err in taking judicial notice of the South Carolina judgment and the service of process finding. The doctrine of res judicata and collateral estoppel bar relitigation of a factual dispute even when the factual dispute was erroneously decided in favor of a party who did not testify." (*Id.* at p. 1393.) Despite the defendants' argument to the contrary, the trial court here applied collateral estoppel principles to prevent Debreu from challenging the Delaware choice of law provision.

---

[17] The Carlyle defendants include The Carlyle Group, L.P., Carlyle Partners V, L.P., Carlyle Financial Services Harbor, L.P., Carlyle Partners V-A, L.P., CP V Coinvestment A, L.P., CP V Coinvestment B, L.P., Carlyle-Clipper Coinvestment, L.P., David Lippman, Laird Landmann, Tad Rivelle and Meredith Jackson.

We conclude the trial court erred by applying collateral estoppel because the issues before the federal district court and the trial court were not identical.  As stated, the federal district court was examining the effect of the forum selection clause in the 2017 LLC Agreement, while the trial court examined the effect of the choice of law clause.  Each serves a different purpose: A forum selection clause determines "the proper forum for litigation," while a choice of law provision indicates what "law is to govern disputes concerning the contract."  (*Smith, Valentino & Smith, Inc. v. Superior Court* (1976) 17 Cal.3d 491, 494.)

Further, the burden of enforcing each provision is different. "Whether an issue is 'identical' to a previously adjudicated issue for purposes of collateral estoppel depends on the burden and standard of proof applicable in each proceeding or action in relation to the party who obtained a favorable finding in the prior action and who then invokes collateral estoppel in the subsequent proceeding with regard to that finding."  (*Bennett v. Rancho California Water Dist.* (2019) 35 Cal.App.5th 908, 919.)  Thus, "collateral estoppel does not apply where the two proceedings at issue have different burdens of proof [citations] or where the burden of proof falls on a different party in each proceeding." (*People v. Esmaili* (2013) 213 Cal.App.4th 1449, 1463; accord, *The Grubb Co., Inc. v. Department of Real Estate* (2011) 194 Cal.App.4th 1494, 1503 ["collateral estoppel does not apply when the factual finding in the prior proceeding was arrived at based on a lower standard of proof than the one required in the subsequent proceeding"].)

In making its ruling, the federal district court explained that it "need not accept the pleadings as true on a motion to enforce a forum selection clause" and that a party challenging a

21

forum selection clause "'bears a "heavy burden of proof" and must "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or over-reaching.""'  The same standard generally applies in California.  (See *Global Packaging, Inc. v. Superior Court* (2011) 196 Cal.App.4th 1623, 1633 ["[a] forum selection clause, however, is presumed valid; the party opposing its enforcement bears the 'substantial' burden of proving why it should *not* be enforced"]; accord, *Verdugo v. Alliantgroup, L.P.* (2015) 237 Cal.App.4th 141, 147 (*Verdugo*) ["[t]he party opposing enforcement of a forum selection clause ordinarily 'bears the "substantial" burden of proving why it should not be enforced"']; *America Online, Inc. v. Superior Court* (2001) 90 Cal.App.4th 1, 9 ["Normally, the burden of proof is on the party challenging the enforcement of a contractual forum selection clause."].)[18]

But the burden is different for a choice of law provision.  As stated, "[t]he party seeking to enforce the choice-of-law provision bears the burden to establish a sufficient relationship to the state whose law the parties chose."  (*Colaco, supra,* 25 Cal.App.5th at p. 1188; see *Washington Mutual, supra,* 24 Cal.4th at p. 919 [A ""'forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state.  In such event [that party] must demonstrate that the latter rule of decision will further the interest of the foreign state and therefore that it is an

---

[18]     However, "the burden is reversed when the underlying claims are based on statutory rights the Legislature has declared to be unwaivable."  (*Verdugo*, *supra*, 237 Cal.App.4th at p. 144.) Debreu did not argue his claims were based on unwaivable statutory rights when opposing the forum non conveniens motion but, rather, that the 2017 LLC Agreement was not enforceable.

appropriate one for the forum to apply to the case before it"""];
*Garamendi v. Mission Ins. Co.* (2005) 131 Cal.App.4th 30, 41;
*1-800-Got Junk? LLC v. Superior Court* (2010) 189 Cal.App.4th
500, 513 ["Initial burden is on the party seeking to enforce the
choice of law provision . . . to show the provision is enforceable."].)

Accordingly, to the extent the trial court improperly
concluded the federal court's enforcement of the Delaware forum
selection clause prevented Debreu from challenging the
applicability of the Delaware choice of law provision, it erred.
(See *Wimsatt v. Beverly Hills Weight etc. Internat., Inc.* (1995)
32 Cal.App.4th 1511, 1514 ["Different sovereignties, different
rules, different burdens: no collateral estoppel."].)[19]

> 3. *The Trial Court Should Determine on Remand*
> *Whether New York or California Law, or a*
> *Combination, Applies on Demurrer*

The 2013 MSA, which Debreu alleges is the basis for his
complaint, contains a New York choice of law provision.[20]  In his
opening brief, Debreu argued that New York law applied to his

---

[19]     For the first time on appeal, the TCW Defendants argued
the internal affairs doctrine requires application of Delaware law
because TCW Owners is incorporated in Delaware.  This
argument was not raised in the trial court and is forfeited.  (See
*City of San Diego v. D.R. Horton San Diego Holding Co., Inc.*
(2005) 126 Cal.App.4th 668, 685 ["Contentions or theories raised
for the first time on appeal are not entitled to consideration."].)

[20]     Section 13(b) of the 2013 MSA provides:  "This Agreement,
the legal relations between the parties and the adjudication and
the enforcement thereof, shall be governed by and interpreted
and construed in accordance with the laws of the State of New
York."

contract causes of action, and California law applied to his tort causes of action.[21] The TCW Defendants argue that Debreu "does not even attempt to meet his burden of establishing the applicability of New York law to *this* dispute" because "Debreu does not provide any basis upon which a court could conclude that New York has any relationship to the parties or the transaction in dispute (let alone a substantial relationship, as *Nedlloyd* requires). He fails to identify any reasonable factual basis that might provide some nexus to this dispute. None of the Defendant entities is incorporated in New York. Neither Debreu nor any of the individual Defendants is alleged to live in New York. None of the events is alleged to have taken place in New York; in fact, the pleadings only mention New York twice to reference the optional New York forum selection clause in the 2013 MSA." Debreu concedes the record here is "underdeveloped" as to the applicability of New York law. We agree and for the reasons explained below conclude that remand is appropriate to have the trial court determine whether New York or California law, or some combination of the two, should apply on demurrer.

When presented with a choice of law provision, as a preliminary step, "the trial court should first examine the choice-of-law clause and ascertain whether the advocate of the clause has met its burden of establishing that the various claims . . . fall within its scope." (*Washington Mutual, supra,* 24 Cal.4th at p. 916, citing *Nedlloyd, supra,* 3 Cal.4th at pp. 468-470 [Hong Kong choice of law clause broad enough to encompass contract and tort claims].) Then, "[i]f the trial court finds that the . . .

---

[21] As stated, Debreu subsequently argued in response to our request for supplemental briefing that California law applied to all his causes of action.

24

claims fall within the scope of a choice-of-law clause, it must next evaluate the clause's enforceability pursuant to the analytical approach reflected in section 187, subdivision (2) of the Restatement Second of Conflict of Laws (Restatement). Under that approach, the court must first determine: '(1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law. If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a *fundamental* policy of California. If there is no such conflict, the court shall enforce the parties' choice of law. If, however, there is a fundamental conflict with California law, the court must then determine whether California has a "materially greater interest than the chosen state in the determination of the particular issue. . . ." (Rest., § 187, subd. (2).) If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy.'" (*Washington Mutual,* at pp. 916-917, citing *Nedlloyd*, at p. 466, fns. omitted.)

Here, neither Debreu nor defendants provided any analysis or argument in the trial court as to why the New York choice of law provision set forth in the 2013 MSA should or should not apply, and we decline to make that determination in the first instance on appeal. We further note the parties have not sufficiently addressed whether all of Debreu's causes of action, contract and tort, should be subject to the 2013 MSA's choice of law provision given the breadth of the provision. (See *Nedlloyd*,

*supra*, 3 Cal.4th at p. 469 [construing similar choice of law provision as applying to both contract and tort claims because "[w]e seriously doubt that any rational businessperson, attempting to provide by contract for an efficient and business-like resolution of possible future disputes, would intend that the laws of multiple jurisdictions would apply to a single controversy having its origin in a single, contract-based relationship"].)

Additionally, not all the defendants are parties to the 2013 MSA, and it is unclear whether they would be subject to the New York choice of law provision. As Debreu noted in the trial court, "certain defendants, including the TCW Defendants (except for Clipper Holding, L.P. and Clipper GP, LLC) and the Nippon Defendants, are not parties to the 2013 MSA; for at least those Defendants, there is no applicable choice of law provision, and the contract claims are governed by the law of the place of performance, if indicated, and if not, then where the contract was made—in each case, California."

Finally, in his response to our request for supplemental briefing, Debreu argued that California law should apply to his contract and tort causes of action. The TCW Defendants dispute that California law applies, largely reprising their arguments that Delaware law applies. In all events, on remand the trial court should determine whether California law should apply on demurrer if, for example, the court determines the 2017 MSA's New York choice of law provision is unenforceable under *Nedlloyd* and/or the court determines the provision is unenforceable as to those defendants that are not signatories.

26

Although we determine it was error to apply Delaware law on demurrer given the operative complaint's allegations, we express no opinion whether defendants can demonstrate through some other future motion that Delaware law applies to the parties' dispute. (See *Kruss v. Booth* (2010) 185 Cal.App.4th 699, 714 ["That is, *for the moment,* we must look to California law [on demurrer]. . . . [I]t may very well be that, in a future motion for summary adjudication, facts will be shown to be undisputed (or in a future bifurcated trial, the trier of fact will find such facts to be true) that will" demonstrate another state's "law will be the operative body of law to apply to the case."].)[22]

## DISPOSITION

The judgment is reversed, and the matter is remanded to the trial court with directions to vacate its orders sustaining the demurrers to the second amended complaint without leave to amend. On remand, the trial court shall determine whether New York or California law, or a combination of the two, applies to the operative complaint consistent with this opinion; it should then

---

[22] In ruling on Ravich's demurrer, the trial court did not reach Ravich's alternative argument that each cause of action was not sufficiently pleaded against him, and on appeal Ravich argues Debreu cannot state a claim against him under Delaware or New York law. We decline to decide if Debreu has sufficiently pleaded claims against Ravich under New York law because the trial court needs to determine whether New York or California law, or some combination, applies. On remand, once the court determines the applicable state law, it should decide whether each cause of action is sufficiently pleaded against Ravich.

27

determine whether each cause of action is sufficiently pleaded. Each party shall bear its own costs on appeal.

MARTINEZ, P. J.

We concur:

FEUER, J.                         STONE, J.